HOOD, Judge.
This is an action for damages for personal injuries sustained by plaintiff, Dudley Foreman, when a cattle guard on which he was standing was struck by the boom or bucket of a Gradall machine. The machine was owned by the Vermilion Parish Police Jury, and was being operated by one of its employees, Gordy Lege. This suit was instituted originally against Lege, the Police Jury and Claurice Duhon, the latter being a member of the Police Jury.
Third party demands for indemnification were filed by these original defendants against Patterson-Redmond Equipment, Inc., from whom the Gradall machine had been purchased, and Warner & Swasey Company, the manufacturer of the machine. Although plaintiff thereafter amended his petition to include these third party defendants and one other party as defendants in the principal suit, he voluntarily dismissed the suit as to these additional defendants.
Judgment was rendered by the trial court in favor of plaintiff and against the Police Jury for the sum of $15,579.49. Judgment also was rendered dismissing the *654 Police Jury’s third party demands against Patterson-Redmond and Warner & Swa-sey. The defendant Police Jury has appealed, contending that the trial court erred in condemning it to pay damages or in failing to grant it relief under its third party demand. Plaintiff has answered the appeal, praying that the amount of the award be increased.
The issues are: (1) Was Lege negligent in operating the Gradall machine? (2) Was the accident caused by a defect in the design or manufacture of that machine? (3) Was the amount of the award excessive or inadequate?
The accident which caused plaintiff’s injuries occurred on February 21, 1968. Lege was employed by the Vermilion Parish Police Jury to operate a Gradall machine, and at the time of the accident he was using that machine to clean out a ditch running along the east side of a public road in Vermilion Parish. The Gradall was stationed on the road, with the boom extending eastward, a few feet north of a cattle guard which had been constructed over the ditch providing access from the road to a driveway leading to plaintiff’s home on the east side of the road.
While Lege was using this Gradall machine to clean out the ditch, plaintiff arrived at the scene and became engaged in a conversation with Horace Fabre, another employee of the Police Jury. Foreman and Fabre stood on the cattle guard in full view of Lege while they were talking.
The procedure used by Lege in cleaning out the ditch was to pick up a scoop of dirt with the bucket of the Gra-dall, swing the boom and bucket to his left, dump the dirt, return the bucket from left to right stopping it at the point where he intended to dig, and then dropping the bucket to the ground to get another scoop of dirt. The swing of the boom from side to side was controlled by foot pedals, and the raising and lowering of the bucket were controlled by a hand lever, all of which were operated by Lege. The machine was equipped with a hydraulically-operated swing chain (described as being similar to a large bicycle chain), and this chain was an essential part of the mechanism needed to control the swing of the boom from side to side. On occasions when the swing chain would break, the boom would swing freely, it could not be controlled by the pedals, and the operator could not use the pedals to stop the bucket at the point where he desired to dig. The breaking of the chain, however, would not interfere with the raising and lowering of the bucket by means of the hand lever.
Immediately prior to the time this accident occurred, Lege dumped a scoop of dirt, and then as he began swinging the boom of the Gradall from left to right in the direction of the cattle guard the swing chain broke. He was unable to use the pedals to control the swing of the bucket after the chain broke, and the bucket continued to swing to Lege’s right, or to the south, until it struck a side railing on the cattle guard. The railing was propelled inward by the blow, and it struck plaintiff on the right forearm, knocking him to the floor of the cattle guard. Foreman was rendered momentarily unconscious, and as a result of that accident he sustained the injuries for which he now claims damages.
Lege testified that he heard a “knock” when the chain broke, but that this knock was similar to other noises made by the machine while it was being operated, and that he did not know that the chain had broken until the boom failed to stop swinging when he released the control pedal. He discovered that the chain was broken when the bucket was about two feet above the bottom of the ditch and about 24 feet north of the cattle guard. He stated that when he realized that the chain had broken he pushed the control lever forward as hard as he could in an attempt to lower the bucket to the ground and thus stop it from swinging. The bucket did not drop to the ground for some reason, and instead it continued to swing southward a distance of about 24 feet from the point where Lege *655 discovered that the chain was broken to the point where it struck the cattle guard.
The evidence shows that the swing chain on this particular Gradall machine broke frequently, and that Lege was aware of that fact. He testified that this was the fourth new chain which had been used on the machine during the two year period he had operated it, and that each of the prior three chains had broken from seven to nine times before it was replaced. He estimated that the swing chain had broken at least 23 times while he was using that machine. He thus was thoroughly familiar with the fact that the swing chain broke frequently, and that the way to stop the boom from swinging when that occurred was to drop the bucket to the ground. He admits that he knew that plaintiff was near the machine, and that he did not warn Foreman of the fact that the chain might break and that it was dangerous for him to remain so close to the machine. He explains his failure to warn or to take other safety precautions by stating that he had installed a new swing chain on this machine ten or twelve days before the accident occurred, that “sometimes it’ll go as much as two months without a link break,” and that he had never had one to break within ten or twelve days after a new chain had been installed.
Charles K. Young, an expert mechanic who has had extensive experience with Gradall machines, testified that the bucket should have struck the ground within two feet of the point where Lege says he pushed the control lever forward in an attempt to drop it. He stated that “it couldn’t possibly” travel as much as twelve feet to the right of the operator after the level was pushed ’for the purpose of lowering the bucket. Young testified that the primary cause of chain breakage is “swinging against objects,” or using the bucket as a hammer to knock down trees or other obstructions, and that the operator can easily detect whether the chain is about to break by simply looking at the cotter pins on the links of the chain. He stated that it takes only about “three seconds” to look down at the chain as you get into the cab to see if the cotter pins were in the right position. Lege stated that he checked the swing chain the day before the accident, but he concedes that he had not checked it that day.
Marion Sonnier, another Gradall operator employed by the Police Jury, testified that the chains on these machines broke often, and that the chain can be damaged by striking the bucket against trees or culverts. He stated, however, that normally a new chain lasts from three to five months. He felt that the operator could not detect when the chain was about to break by casually looking at the cotter pins, but he conceded that the operator could determine that the chain was about to break by the “grinding of the metal that falls below it on the chain.”
The trial judge concluded that Lege was negligent, and that his negligence was a proximate cause of the accident. We agree. We find that Lege, knowing that the chain on this machine broke frequently, was negligent in failing to inspect the chain and determine that it was about to break, in failing to drop the bucket within a reasonable time after he discovered that the chain had broken, and in failing to warn plaintiff of the danger of standing close to the machine while it was being operated. We think his negligence in these respects was a proximate cause of the accident.
Plaintiff was not aware of the fact that the chain on this machine broke frequently making it impossible for the operator to control the side swing of the boom, and he thus had no reason to suspect that it was dangerous for him to stand about 24 feet from the nearest point where the digging operations were being conducted. We agree with the trial judge, therefore, that Foreman was free from contributory negligence.
The defendant Police Jury contends that the accident was caused by defects in the *656 design and manufacture of the Gradall machine, and that Lege thus was free from negligence. It argues, alternatively, that it is entitled to'recover on its third party demand from Patterson-Redmond and from Warner & Swasey, as the seller and manufacturer of the machine.
We have concluded that Lege was negligent, and plaintiff’s suit has been dismissed as to the seller and manufacturer of the machine. The principal defense of the Police Jury thus is without merit. The question remains, however, of whether Patterson-Redmond and Warner & Swasey were also negligent and thus whether the Police Jury is entitled to recover from either of them under its third party demand.
There is no evidence in the record tending to show defects in the design or manufacture of the Gradall machine. The Police Jury reasons that the machine must have been defective because: (1) A new chain had been installed ten to twelve days before the accident occurred, and Lege testified that he had not struck anything with the bucket during that time; (2) if the breaking of the chain was caused by using the bucket as a hammer, then the manufacturer was negligent in failing to design the bucket so that it could not be used in that manner; and (3) the manufacturer subsequently substituted a hydraulic system for the swing chain, indicating that it recognized the weakness and the danger of the chain drive.
We do not feel that the circumstances pointed out by defendant are sufficient to establish that there was a defect in the design or manufacture of the Gradall machine. The evidence fails to show any such defect, and we thus find no error in the judgment of the trial court rejecting the Police Jury’s third party demands.
The final issue presented relates to quantum. The trial court awarded plaintiff $5,579.49 as special damages, and $10,000.00 as general damages for the injuries he sustained. There is no dispute as to the award of special damages. Defendant, however, contends that the award of general damages is excessive, while plaintiff contends that the award should be increased.
The principal injury sustained by plaintiff as a result of the accident consisted of a transverse fracture of the right radius. Although there was good alignment of the fragments when the arm was put in a cast on the day of the accident, plaintiff began suffering pain and swelling in his arm about three weeks later, and it was discovered then that the fragments had slipped, and that there was a complete separation of those fragments. An open reduction of the fracture was performed on March 20, 1968, at which time the bones were fixed by using a small metal plate and four screws. At the same time a bone graft from Foreman’s hip was applied to the fractured area. He was hospitalized for about seven days for that surgery.
A posterior splint was applied to plaintiff’s right arm following the above mentioned surgery, and that splint was removed in May,, 1968. Plaintiff was referred to a physical therapist about the time the splint was removed, and he remained under the treatment of that therapist for a period of about two and one-half years. Despite this treatment, he continued to suffer pain in his arm and wrist, and to experience weakness and loss of motion in his shoulder, elbow, wrist and fingers. Osteoporosis developed in his wrist in May, 1968, and it has persisted since that time.
Surgery was again performed on plaintiff’s arm on March 7, 1969, a little more than one year after the accident occurred. At that time the metal plate and screws were removed and some scar tissue was excised. Foreman was hospitalized for two days at that time. Following that sur *657 gery, plaintiff was treated by an ortho-paedic surgeon who specialized in hand surgery. This specialist found substantial limitation of motion of the right shoulder, elbow, wrist and fingers, and he prescribed strenuous exercises for his hand and arm. He also placed Foreman’s right hand in a knuckle bending type splint.
Plaintiff is 44 years of age, and he has been a rice farmer for 20 years. A number of doctors treated or examined him. They agree generally that since the accident occurred plaintiff has suffered pain upon movement of his right shoulder, arm, elbow, wrist and hand, that he has limitation of motion in those parts of his body, that he has developed osteoporosis in the wrist, and that he now has some atrophy of the right arm. They differ, however, as to the extent o'f his disability. One ortho-paedic surgeon who examined him felt that plaintiff is disabled from actively engaging in his regular occupation as a rice farmer. Another such surgeon felt that he could perform the work .of a farmer, although he concluded that plaintiff has a 10 percent permanent partial loss of use of his right hand. In that connection, Foreman testified that he has supervised his farm work since the accident, that he drove combines during the summer of 1970, and that at times he has driven a tractor.
Plaintiff suffered an injury to his right hand when he was nine or ten years of age, and there was some speculation among medical experts as to whether his present disability might be attributed partially to the old injury. Also, a question was raised by at least one treating physician as to whether plaintiff performed the exercises which were prescribed for him, and thus whether he did all that he reasonably could to minimize his damages.
The trial judge, after observing that plaintiff had suffered severe pain and had been subjected to surgery on two occasions as a result of the accident, concluded that he was entitled to an award of $7500.00 for the injuries, pain and suffering which he sustained as a result of the accident. The trial judge also stated in his reasons for judgment that while plaintiff “may be suffering some slight disability,” he felt that that disability “cannot be completely attributed to the accident of the 21st of February, 1968.” He nevertheless awarded plaintiff the additional sum of $2500.00 “for any resultant disability which may have occurred as a result of said accident.” The award of general damages thus amounted to the aggregate sum of $10,000.00.
The established rule is that the trial court has much discretion in the award of general damages for personal injuries, and that the reviewing court will not disturb the award made by him unless it finds that there has been an abuse of that discretion. Pichauffe v. Naquin. 241 So.2d 574 (La. App. 1 Cir. 1970); Murphy v. Piro, 240 So.2d 111 (La.App. 4 Cir. 1970) ; Guillory v. Fidelity and Casualty Company of New York, 236 So.2d 876 (La.App. 3 Cir. 1970).
We cannot say that the trial judge erred in his findings as to plaintiff’s injuries, and we conclude that the award o'f general damages made to plaintiff was within the range of the discretion vested in the trial court. We thus will not disturb the award made in this instance.
The judgment appealed from is affirmed. The costs of this appeal are assessed to defendant-appellant, Vermilion Parish Police Jury.
Affirmed.