336 So.2d 986 (1976)
Dudley FOREMAN, Plaintiff-Appellee,
v.
VERMILION PARISH POLICE JURY et al., Defendants-Appellants.
No. 5570.
Court of Appeal of Louisiana, Third Circuit.
August 13, 1976.
Rehearing Denied September 20, 1976.
Writ Refused December 1, 1976.
*987 Sandoz, Sandoz & Schiff by Leslie J. Schiff, Opelousas, for plaintiff-appellant.
Broussard, Broussard & Moresi by Paul Moresi, Jr., J. Isaac Funderburk, Abbeville, for defendant-appellee.
Before HOOD, CULPEPPER and MILLER, JJ.
HOOD, Judge.
This suit was instituted originally as an action for damages by Dudley Foreman against the Vermilion Parish Police Jury. Judgment was rendered in favor of Foreman and against the Police Jury for the principal sum of $15,579.49, and we affirmed that judgment. See Foreman v. Vermilion Parish Police Jury, 258 So.2d 652 (La.App. 3 Cir. 1972).
In February, 1976, Foreman caused a writ of fieri facias to issue directing the Sheriff of Vermilion Parish to seize and sell an 80-acre tract of land owned by the Police Jury to satisfy the above judgment. The Sheriff seized that tract of land and he served notice on the Police Jury of the seizure and of his intent to sell the property on April 21, 1976.
The Police Jury then instituted the present action against Foreman and the Sheriff, seeking to revoke the seizure and to enjoin the sale of the property. Judgment was rendered by the trial court in favor of the Police Jury, enjoining Foreman and the Sheriff from proceeding with the sale. Foreman appealed, and the matter is before us now on that appeal.
The sole issue presented is whether property owned by the Vermilion Parish Police Jury is subject to seizure and sale under a writ of fieri facias issued to satisfy a money judgment rendered against the Police Jury.
The 80-acre tract of land involved in this suit was purchased by the Vermilion Parish Police Jury in 1898, and it was initially dedicated for use as a "Poor Farm." The record indicates that the property was used for that purpose shortly after it was purchased. Later, however, the Police Jury leased the land for farming purposes to an individual for a four year term, beginning January 1, 1920. The property has been leased for agricultural purposes to another person since 1968.
On June 3, 1974, the Police Jury adopted a resolution declaring its intention to use the 80-acre tract of land as a "parish penal farm institution," and as a place "to store vehicles abandoned on roads and/or public properties." No prisoners have worked on the farm since that resolution was adopted, or at any time during the past five years.
*988 The Police Jury contends primarily that the exclusive means by which a judgment creditor may obtain payment of a judgment rendered against it is out of funds appropriated for that purpose by the Police Jury, and that property owned by the Jury thus is not subject to seizure and sale. It cites and relies on LSA-R.S. 13:5109-B to support that argument.
Foreman contends that the 80-acre tract of land seized in this instance is not being used for a public purpose, that it is owned by the Police Jury in its proprietary capacity, as distinguished from its public or governmental capacity, and that the property thus is subject to seizure and sale to satisfy the money judgment which was rendered against the Police Jury. He relies on Bullis v. The Town of Jackson, 203 La. 289, 14 So.2d 1 (1943); Town of Farmerville v. Commercial Credit Company, 173 La. 42, 136 So. 82 (1931); and McCrary Co. v. Town of Winnfield, 40 F.Supp. 427 (La.1941).
Article 12, Section 10(C), of the Louisiana Constitution of 1974, provides:
"(C) Procedure; Judgments. The legislature shall provide a procedure for suits against the state, a state agency, or a political subdivision. It shall provide for the effect of a judgment, but no public property or public funds shall be subject to seizure. No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which judgment is rendered." (Emphasis added).
The pertinent parts of LSA-R.S. 13:5109-B, as amended by Act 434 of 1975, read:
"B. Any judgment rendered in any suit filed against . . . a political subdivision, . . . shall be exigible, payable, and paid only out of funds appropriated for that purpose by the . . . named political subdivision, if the suit was filed against a political subdivision." (Emphasis added).
We interpret the quoted provisions of the Constitution and Revised Statutes to mean that property owned by a political subdivision, such as the Police Jury, is not subject to seizure and sale under a writ of fieri facias issued to satisfy a money judgment rendered against that political subdivision. Those constitutional and statutory provisions were adopted or enacted long after the cases cited by Foreman were decided, so the cases relied on by him are not applicable here.
It is immaterial, we believe, whether the 80-acre tract involved here is or is not being used for a public purpose. All parties concede that it is owned by the Police Jury. We conclude that it is "public property," as that term is used in Art. 12, Sec. 10(C), of the Louisiana Constitution, and that since it is public property it is not subject to seizure and sale to satisfy a judgment against the political subdivision. That conclusion is consistent with, and we think it is compelled by, the additional provisions contained in the above section of the Constitution, and in LSA-R.S. 13:5109-B, that a judgment rendered against a political subdivision shall be paid only from funds appropriated for that purpose. The law thus, in effect, prohibits the payment of such a judgment from the unappropriated proceeds of the sale of property owned by the subdivision.
Foreman contends, finally, that the trial court judgment, which prohibits him from seizing and selling property owned by the Police Jury to satisfy his judgment, denies him "justice and equal protection of the laws." Article 12, Section 10(A), of the Louisiana Constitution of 1974 provides that a political subdivision is not immune from "suit and liability" for injury to person or property. Foreman takes the position that the judgment appealed from, decreeing in effect that the Police Jury is immune from "seizure," conflicts with the cited section of the constitution which provides that it is not immune from "suit and liability." His argument is that by granting the Police Jury immunity from seizure, *989 the trial court judgment also grants it immunity from suit and liability, in violation of the provisions of the constitution, since it deprives the judgment creditor of a means of enforcing payment of the debt for which the Jury is liable.
We construe the above argument to be (1) that there is a conflict in the provisions of Article 12, Section 10, of the Louisiana Constitution which should be resolved in favor of the judgment creditor, and (2) that LSA-R.S. 13:5109-B, and La.Const.1974, Art. 12, Sec. 10(C), are invalid on the ground that they violate the "due process of law" and the "equal protection of the laws" provisions of the Fourteenth Amendment of the United States Constitution.
We find no conflict between Section 10(A) and Section 10(C), of Article 12, of the constitution. Neither do we find a conflict between LSA-R.S. 13:5109-B and Section 10(A), which provides that a political subdivision is not immune from suit or liability. The first cited section of the constitution, and LSA-R.S. 13:5109-B, merely provide a method by which judgments rendered against the state or its political subdivisions may be paid. They do not conflict with the provisions of the constitution that the state or its subdivisions are not immune from suit or liability.
The state clearly has the right to regulate the way in which judgments against its political subdivisions can be paid, and to prohibit the seizure of property owned by those subdivisions. In our opinion, the methods provided in the above cited statutes and constitutional provisions do not offend the rights granted to the judgment creditor by the Fourteenth Amendment of the Federal Constitution.
We find no error in the judgment which was rendered by the trial court.
For the reasons herein assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
AFFIRMED.
MILLER, J., filed a concurring opinion.
MILLER, Judge (concurring).
The manner in which the Vermilion Parish police jury has shown its refusal to pay this judgment indicates to me that they are now ignoring the plain meaning of Art. 12, § 10(A) of Louisiana's 1974 Constitution. Political subdivisions ARE NOT IMMUNE from suit and liability. I understand Art. 12, § 10(C) to provide for an orderly method by which political subdivisions are to pay judgments against them. LSA-R.S. 13:5109-B provides nothing more than the same. When it appears that a political subdivision has set upon a course of conduct leading to an absolute refusal to pay a judgment, then Art. 12, § 10(A) must be read to provide relief to the judgment creditor.
This record establishes that Foreman's counsel has respectfully and properly sought adoption of an ordinance authorizing payment of the judgment. Foreman offered to accept reasonable monthly instalments. His counsel has made personal appearances before the jury. He has been met with the assistant district attorney's response which appears in the record"Apparently, the Police Jury does not wish to make payment of the judgment; and, as you know, there is no way for you to enforce a judgment against the Police Jury."
In this context I cannot agree that political subdivisions, which we agree are NOT IMMUNE from suit and liability, can defeat valid claims by refusing to authorize payment of the judgment.
The doctrine of governmental immunity was expressly rejected by Louisiana when it adopted its Constitution of 1974. Are we not here reinstituting the doctrine by recognizing a governmental subdivision's immunity from efforts to enforce this judgment?
If the judgment creditor has no right to enforce his judgment, has he not lost the civil rights guaranteed him under the Fourteenth Amendment of the United States Constitution? Should the proper federal authorities learn of this intentional deprivation *990 of this claimant's civil rights, would not the parish stand to lose all federal funding? Surely, this claimant and those similarly situated will be able to exercise rights guaranteed to them by Louisiana's recently adopted constitution.
I respectfully concur.