JjTOBIAS, Judge.
In this consolidated appeal, plaintiffs, Anthony Vogt, et al., and Allen Edge-combe, et al., appeal from two district court judgments rendered on 14 September 2000 and 29 November 2000, denying their petition for writ of mandamus and motion for writ of seizure to satisfy judgment, respectively. The defendant herein is the Board of Commissioners of the Orleans Levee District (“Levee Board”).
The factual and procedural history of this case follows.
Act 99 of the 1924 Louisiana Legislature authorized the Levee Board to acquire property, either by purchase, donation, or expropriation, for the purpose of creating the Bohemia Spillway in Plaquemines Parish. The Levee Board exercised that authority and acquired the properties necessary for construction of the spillway.
In 1983, Article VII, § 14 of the Louisiana Constitution was amended to provide for the return of property, including mineral rights, to a former owner from whom the property had previously been expropriated when the legislature declared that the public and necessary purpose that originally supported the expropriation [¡liad ceased to exist. The amendment also ordered the return of the property of the former owner under such terms and conditions as specified by the legislature.
Pursuant to this constitutional amendment, the legislature enacted Act 233 of 1984, which declared that the public purpose of the Bohemia Spillway had ceased to exist and directed the Levee Board to return the ownership of the property to the owners or their successors from whom the property was acquired by expropriation or by purchase under threat thereof. This Act authorized the Louisiana Department of Natural Resources to determine entitlement to certification for eligibility for return of property. After the Louisiana Supreme Court upheld the constitutionality of Act 233 of 1984,[1] the Levee Board transferred title to the properties certified by the Department of Natural Resources to the former landowners or their successors in 1991 and 1992. Act 233 of 1984 was subsequently amended and reenacted by Act 819 of 1985, Act 847 of 1992, Act 1364 of 1997, and Act 1378 of 1999.
Plaintiffs in the instant matter, among others, are persons to whom property was *651 transferred pursuant to Act 233 of 1984. In an earlier lawsuit in this same litigation, plaintiffs requested a declaratory judgment decreeing ownership of the property, plus fruits and revenues as of 29 June 1984 (the effective date of Act 233 of 1984), an accounting of all revenues from that date, a money judgment for the amount of royalties incorrectly paid to the Levee Board after 29 June 1984, damages double the amount of the royalties and attorneys’ fees, and dissolution of the mineral lease on the property held by Bass Enterprises Production Company. The Levee Board filed an exception of no cause of action, which the trial court maintained. On appeal, this Court reversed, holding that the plaintiffs stated a | scause of action for declaratory and money judgments relating to an accounting and revenues collected by the Levee Board from 29 June 1984 to the dates in 1991 and 1992 when individual titles were transferred on equitable as well as legal grounds.[2] The Levee Board subsequently produced an accounting of revenues received from the subject property from 29 June 1984, totaling $2,853,358.44, and plaintiffs accepted the accounting.
Plaintiffs subsequently filed a motion for summary judgment asking (1) for a declaration that the Levee Board’s interest in the property at issue terminated on 29 June 1984, and that its failure to promptly return the fruits and revenues it received from the property after that date constituted a wrongful taking and illegal appropriation of the plaintiffs’ property; and (2) entry of a judgment against the Levee Board in the full amount of $2,853,358.44, representing mineral income wrongfully taken by the Levee Board from the plaintiffs and never repaid, in addition to judicial interest and attorneys’ fees. The Levee Board reconvened, seeking return of property and revenues from transferees whose property was not originally taken by expropriation or threat thereof. On 24 July 1998, the trial court granted summary judgment in favor of the plaintiffs and against the Levee Board in the amount of $2,853,358.44, together with judicial interest from the date of judicial demand, until paid, but did not award attorneys’ fees. It also dismissed the Levee Board’s recon-ventional demand. On appeal, this Court affirmed and the Louisiana Supreme Court denied writs.[3] The trial court’s 24 July 1998 judgment is now final and definitive.
|4In an attempt to satisfy their judgment, plaintiffs moved to conduct a judgment debtor examination. The Levee Board filed a petition for declaratory judgment and injunctive relief, seeking a judgment declaring that any seizure of Levee Board funds was unconstitutional pursuant to La. Const. Art. XII, § 10(C), that the plaintiffs were prohibited from seizing Levee Board assets, and that a preliminary injunction issue enjoining the plaintiffs from attempting to seize, garnish, attach, or encumber in any way the Levee Board’s assets. Subsequently, by stipulation of the parties, plaintiffs agreed not to directly seize, garnish, attach, or encumber any Levee Board property without first having a contradictory hearing with all parties present; the petition for declaratory judgment and injunctive relief was continued. The Levee Board, however, submitted to a judgment debtor examination on 3 February 2000.
On 8 August 2000, plaintiffs filed a petition for writ of mandamus requesting that *652 the trial court direct the president of the Levee Board to satisfy the final judgment from available funds, or if no funds were available, to levy a tax on all persons within the district to satisfy the judgment. In response, the Levee Board filed an exception of no cause of action arguing that, as a public body, its assets were not subject to mandamus orders or seizure under La. Const. Art. XII, § 10(C).
The trial court on 11 September 2000 rendered judgment denying the writ of mandamus as well as the Levee Board’s exception of no cause of action and request for preliminary injunction. In reasons for judgment, the trial court stated:
Article 12 (sic), Sec. 10(C) of the Louisiana Constitution provides that public property or public funds belonging to the state or its political subdivisions is not subject to seizure. However, plaintiffs may, at some point, identify property under the control of the Levee | .¡¿District which is not subject to this prohibition and therefore, this court declines to issue a Preliminary Injunction.
On 26 October 2000, plaintiffs filed a rule to show cause why a writ of seizure to satisfy judgment should not issue, commanding the sheriff to seize specific funds, rights, and credits of the Levee Board to satisfy the judgment in the amount of $1,831,528.49, plus all income earned on this sum since 29 June 1984, plus the judicial interest accumulated since date of judicial demand. Again, the Levee Board responded with exceptions of no cause of action and prematurity, arguing that its assets were exempt from seizure.
At the show cause hearing on the writ of seizure to satisfy the judgment, expert witness, David D. DeMonte (“DeMonte”), a certified public accountant, testified that, at the plaintiffs’ request, he reviewed the legislative audits of the Levee Board prepared by Daniel Kyle, the Louisiana Legislative Auditor, for the years 1999 and 2000, in addition to Levee Board’s financial statements produced at the judgment debtor examination in February 2000. He determined that as of 30 June 2000, the Levee Board had a net worth of approximately $120 million, with monies in four proprietary[4] and two governmental funds. In reviewing the financial statements, De-Monte noted that the Levee Board had commingled its proprietary and public funds, explaining that all revenues have been deposited into one account, but accounting for the various funds was done on a bookkeeping basis rather than an actual physical segregation of the funds. According to DeMonte, with the exception of the Lakefront Airport fund, all of the proprietary funds generated income for the Levee Board. He also identified the Levee Board’s | ^“investment securities” account that contained $57 million, $2.7 million of which had been earmarked as “held for Bohemia litigation.” DeMonte testified that other than the “Bohemia litigation” dedication the investment securities were neither dedicated nor encumbered by any operation of the Levee Board. He testified that $57 million in investment securities included a money market account containing $9 million, which was sufficient to satisfy plaintiffs’ judgment without impairing the Levee Board’s governmental function.
Following the show cause hearing, on 29 November 2000, the district court rendered judgment denying the plaintiffs’ motion for writ of seizure as well as the Levee Board’s exceptions. In reasons for judgment, the trial court stated:
*653 The Court finds Foreman v. Vermilion Parish Police Jury, 336 So.2d 986 (La.App. 3 Cir.1976), to be controlling in this matter. The Court there found that pursuant to Art. 12(sic), Sec. 10(C) of the La. Constitution and La. R.S. 13:5109(B), property owned by a political subdivision is not subject to seizure and sale under a writ of fieri facias issued to satisfy a money judgment rendered against that political subdivision. It is immaterial whether the property sought to be seized is being used for a public purpose.
On appeal, plaintiffs argue that the trial court erred in concluding that the royalty income, which the Levee Board holds, is “public property” subject to La. Const. Art. XII, § 10(C). They contend that the exemption from seizure contemplated by La. Const. Art. XII, § 10(C) applies only to suits brought in contract or tort and not to suits for compensation for the taking of private property. Plaintiffs argue that Act 233 of 1984 commanded the Levee Board to return the funds, which constitute their private property as adjudicated by this Court. Thus, plaintiffs contend, the Levee Board’s steadfast refusal to return the royalties constitutes a “wrongful taking” of their private property. Plaintiffs further claim |7that they have demonstrated, without contradiction, that the Levee Board has available, segregated funds in its investment accounts to satisfy the judgment at issue, and that seizure of these funds will not affect the Levee Board’s operations.
Mandamus is a writ directing a public officer to perform a ministerial duty required by law. La. C.C.P. arts. 3861 and 3863. A writ of mandamus is an extraordinary remedy and may be issued in all cases where the law provides no relief by ordinary means or where delay in obtaining ordinary relief may cause injustice. La. C.C.P. art. 3862. If a public officer is vested with any element of discretion, mandamus will not lie. Landry v. City of Erath, 628 So.2d 1178 (La.App. 3 Cir.1993).
La. Const. Art. XII, § 10, relative to suits against the State, provides:
(A) No Immunity in Contract and Tort. Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract of for injury to person or property.
(B) Waiver in Other Suits. The legislature may authorize other suits against the state, a state agency, or a political subdivision. A measure authorizing suit shall waive immunity from suit and liability.
(C) Limitations; Procedure; Judgments. Nothwithstanding Paragraph (A) or (B) or any other provision of this constitution, the legislature by law may limit or provide for the extent of liability of the state, a state agency, or a political subdivision in all cases, including the circumstances giving rise to liability and the kinds and amounts of recoverable damages. It shall provide a procedure for suits against the state, a state agency, or a political subdivision and provide for the effect of a judgment, but no public property or public funds shall be subject to seizure. The legislature may provide that such limitations, procedures, and effects of judgments shall be applicable to existing as well as future claims. No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature |8or by the political subdivision against which the judgment is rendered.
Pursuant to La. Const. Art. XII, § 10(C) the legislature passed La. R.S. 13:5109 B(2), which provides:
*654 (2) Any judgment rendered in any suit filed against the state, a state agency, or a political subdivision, or any compromise reached in favor of the plaintiff or plaintiffs in any such suit shall be exigible, payable, and paid only out of funds appropriated for that purpose by the legislature, if the suit was filed against the state or a state agency, or out of funds appropriated for that purpose by the named political subdivision, if the suit was filed against a political subdivision.
Thus, for a judgment to be exigible, payable, or paid, there must first be an appropriation of funds by the governing body against whom the judgment was rendered.
A judgment creditor of a political subdivision of the State has no way to collect his judgment except by appropriation. Baudoin v. Acadia Parish Police Jury, 96-1288 (La.App. 3 Cir. 9/17/97), 702 So.2d 715; Foreman v. Vermilion Parish Police Jury, 336 So.2d 986 (La.App. 3 Cir. 1976). Appropriation of funds is discretionary and not ministerial, and mandamus will not lie to compel payment of a judgment by a political subdivision. De Laureal Engineers, Inc. v. St. Charles Parish Police Jury, 406 So.2d 770 (La.App. 4 Cir. 1981). In addition, Louisiana courts have repeatedly held that judgment creditors cannot mandamus political subdivisions to appropriate funds for payment of a judgment rendered against the respective political subdivisions. See Jones v. Traylor, 94-2520 (La.App. 4 Cir. 8/23/95), 660 So.2d 933; Landry v. City of Erath, supra; State, Dept. of Trans. & Dev. v. Sugarland Ventures, Inc., 476 So.2d 970 (La.App. 1 Cir.1985); Fontenot v. State, Through Dept. of Highways, 358 So.2d 981 (La.App. 1 Cir.1978), rev’d on other grounds, 355 So.2d 1324 (La.1978).
In Cooper v. Orleans Parish School Board, 99-0050 (La.App.9/8/99), 742 So.2d 55, a case in which virtually all arguments against the applicability of La. Const. Art. XII, § 10 were raised, the plaintiffs had obtained a substantial judgment in a personal injury suit against the Orleans Parish School Board. After the school board refused to pay the judgment, the plaintiffs filed suit alleging that the school board had violated budgetary laws when it transferred more than $10,000,000.00 from the school board’s general liability fund, which was intended to pay liability claims, to its Health Insurance Fund to satisfy health insurance claims. The plaintiffs also alleged equal protection violations arising out of the school board’s payment of claims that arose subsequent to theirs. They sought to enjoin the school board to amend its 1996-1997 operating budget to restore the transferred funds and from paying other debts and claims in preference to their judgment. The trial court issued an injunction requiring the school board to formally ratify or reject the transfer of funds from the general liability fund to the health care fund for the pertinent fiscal year, but denied the plaintiffs’ other claims, concluding that pursuant to La. Const. Art. XII, § 10(C), it had no authority to order the school board to pay the plaintiffs’ judgment. This Court affirmed the trial court and held that a court was without general authority to order the school board to pay the plaintiffs’ judgment in preference to any other indebtedness. Nor did a court have any authority to compel taxing authorities to raise sufficient revenues to fund judgments.
As to a seizure of public funds, the Third Circuit noted in Baudoin v. Acadia Parish Police Jury, supra, that the question of whether the right to seize I ^“unencumbered funds” lies within the judicial power was answered more than one hundred years ago in the case of Carter v. State, 42 La. Ann. 927, 8 So. 836 (1890). *655 In Carter, the plaintiff had sought a writ of fieri facias to seize the State’s property, rights, and credits “which [allegedly] form no part of its annual revenues derived from taxation for the support of the government, and which [therefore] are not exempt from seizure and sale,” for the satisfaction of a judgment against the State. The trial court sustained an exception of no cause of action. The Supreme Court upheld the trial court and explained that to allow the judiciary to issue such a writ would require an inference that the legislature had conferred upon the judicial branch the power to appropriate, a power exclusively belonging to the legislature, in violation of the separation of powers.
In view of the aforementioned jurisprudence, it is clear that no coercive means exist to force the State, state agencies, or political subdivisions to comply with judgments rendered against them. Thus, we find no error in the trial court’s denying plaintiffs’ writ of mandamus and writ of seizure to satisfy the judgment under the circumstances of this case.
Plaintiffs argue that their suit is an action for the appropriation of private property by the Levee Board and involves a self-executing right for compensation that did not require a waiver of sovereign immunity; therefore, the exemption from seizure contemplated by La. Const. Art. XII, § 10(C) does not apply. They are correct that in cases where the State has appropriated private property for public purposes, and compensation is due the landowner for it, the landowner may maintain an action against the State for the compensation due him without the necessity of first obtaining the consent of the State to maintain such a suit. See Angelle v. State, 212 La. 1069, 34 So.2d 321 (La.1948). However, the language Inin La. Const. Art. XII, § 10(C) that “[n]o judgment against ... a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor ... by the political subdivision against which the judgment is rendered” is unambiguous and makes no distinction as to the kind of suit in which the judgment was rendered. Likewise, La. R.S. 13:5109B(2) refers to “[a]ny judgment rendered in any suit filed against the state, a state agency, or a political subdivision .... ”
Finally, plaintiffs contend that the Levee Board has continued to collect and retain the interest on the mineral royalties and converted these funds for its own use. Because the Levee Board exists for the building and maintenance of levees, it has, in effect, appropriated plaintiffs’ funds for levee purposes. This being the case, plaintiffs argue that the Levee Board should be compelled to satisfy the judgment out of existing funds or to levy a tax to raise sufficient funds pursuant to La. Const. Art. VI, § 42(A), citing Kimble v. Giordano, 95-1034 (La.App. 4 Cir. 8/23/95), 660 So.2d 901.
We disagree with plaintiffs’ argument that La. Const. Art. VI, § 42(A) is applicable to the case at hand. La. Const. Art. VI, § 42(A) provides:
(A) Compensation. Notwithstanding any contrary provision of this constitution, lands and improvements thereon hereafter actually used or destroyed for levees or levee drainage purposes shall be paid for as provided by law. However, nothing contained in this Paragraph with respect to compensation for lands and improvements shall apply to batture or to property the control of which is vested in the state or any political subdivision for the purpose of commerce. If the district has no other funds or resources from which the payment can be made, it shall levy on all taxable property within the district a tax sufficient to *656 pay for property used or destroyed to be used solely in the district where collected.
The original landowners of the private property taken or acquired for the construction of the Bohemia Spillway were compensated with funds derived from l^taxes as authorized by Act 99 of 1924.[5] Plaintiffs’ claim to the mineral royalties and interest did not arise from the taking of “land ... actually used or destroyed for levees or levee drainage purposes.” Rather, plaintiffs’ right to these monies arose from the 1983 amendment to La. Const. Art. VII, § 14 and subsequent enactment of Act 283 of 1984. Had the 1983 constitutional amendment not been adopted and/or Act 233 of 1984 not gone into effect, plaintiffs would have no claim to the mineral royalties and interest.
Also, we note that this court’s decision in Kimble, supra, was overruled by the Louisiana Supreme Court in Kimble v. Giordano, 95-2336 (La.2/9/96), 667 So.2d 542. In Kimble, a landowner sued the Plaquemines Parish Government alleging that the parish excavated dirt from his property without providing fair compensation, and obtained a money judgment. Plaintiff sought to enforce the judgment through a writ of mandamus, arguing that the judgment for compensation for the dirt taken should be enforced through mandamus pursuant to La. Const. Art. VI, § 42(A). In dismissing the mandamus action, the Supreme Court held that the plaintiff was attempting to enforce a judgment that arose in tort rather than from expropriation or appropriation and, therefore, La. Const. Art. VI, § 42(A) did not apply.
This court recognizes and sympathizes with plaintiffs’ plight in getting a judgment against the State or political subdivision satisfied. Nonetheless, this court is without constitutional or statutory authority to compel the Levee Board to pay the judgment rendered against it.
| ^Accordingly, the judgments of the trial court rendered on 14 September 2000 and 20 November 2000, denying plaintiffs’ petition for writ of mandamus and motion for writ of seizure, respectively, are affirmed.[6]
AFFIRMED.

. See Board of Commissioners of the Orleans Levee District v. Department of Natural Resources, 496 So.2d 281 (La.1986).

. Vogt v. Board of Levee Commissioners of the Orleans Levee District, 95-1187 (La.App. 4 Cir. 9/4/96), 680 So.2d 149.

. Vogt v. Board of Levee Commissioners of Orleans Levee District, 98-2379 (La.App. 4 Cir. 6/9/99), 738 So.2d 1142, writ denied, 99-2024, 99-2025 (La.10/29/99), 748 So.2d 1166.

. The Levee Board’s proprietary funds included the Lake Vista Community Center Fund, the Orleans Marina Fund, the South Shore Harbor Marina Fund, and the New Orleans Lakefront Airport Fund.

. Board of Commissioners of the Orleans Levee District v. Department of Natural Resources, supra.

. The “Petition of Intervention” filed in this court by Linda Fried, August VonBehren, and Jane Dembrun has been considered in the context of an amicus curiae brief. Interve-nors seek to amend the trial court judgments to delete the name of one of the plaintiffs, arguing that the named plaintiff is not a judgment creditor and has no right of action in this suit. Considering the relief sought, inter-venors’ should have filed their petition in the trial court. See La. C.C.P. art. 1091. Also, we note that the trial court judgments before us do not specifically name the’ individual plaintiffs. In any event, in view of our decision to affirm the trial court and deny plaintiffs relief, it is not necessary for us to address intervenors’ claims.