628 So.2d 1178 (1993)
Vernis J. LANDRY, Plaintiff-Appellant,
v.
CITY OF ERATH, et al. Defendant-Appellee.
No. 93-308.
Court of Appeal of Louisiana, Third Circuit.
December 8, 1993.
Rehearing Denied January 5, 1994.
Preston Miller Summers, Abbeville, for Vernis Landry.
Joseph Charles Kosarek, Abbeville, for City of Erath, et al.
Paul G. Moresi Jr., Abbeville, for Ville Platte Police Jury.
Before GUIDRY, KNOLL and SAUNDERS, JJ.
KNOLL, Judge.
This appeal concerns whether a mandamus may be issued ordering a municipality to pay a judgment rendered against it. The trial court refused to issue the mandamus, stating:
"LSA-C.C.P. Art. 3863 states that a writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law.
This Court is of the opinion that the appropriation of money for any purpose is discretionary, and plaintiff has no right or cause of action to compel the appropriation of money by the Town of Erath to pay the judgment rendered in this matter.
Exceptions of no cause of action and no right of action are hereby sustained."
We affirm.

FACTS
Plaintiff, Vernis Landry, obtained a tort judgment against the City of Erath (the *1179 City) on June 13, 1990. This judgment was affirmed on appeal by the Third Circuit and writs were denied by the Supreme Court. The City has refused to appropriate any funds to pay the judgment.

MANDAMUS
La. Const. art. 12, sec. 10 provides in pertinent part:
"(A) No Immunity in Contract and Tort. Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property.
* * * * * *
(C) Procedure; Judgments. The legislature shall provide a procedure for suits against the state, a state agency, or a political subdivision. It shall provide for the effect of a judgment, but no public property or public funds shall be subject to seizure. No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which judgment is rendered."
Plaintiff strenuously argues that Louisiana courts have given a totally inconsistent interpretation of the Louisiana Constitution's waiver of sovereign immunity, by providing no vehicle for the enforcement of judgments against the state or its political subdivisions; therefore, if a judgment creditor may not seize public property, he should be allowed to proceed by writ of mandamus. While we find plaintiff's logic persuasive, both jurisprudential and academic authorities stand squarely against him. There are two Louisiana cases which discuss this anomaly, Fontenot v. State Dept. of Highways, 358 So.2d 981 (La.App. 1st Cir.1978) and De Laureal Eng. v. St. Charles Par. Pol. Jury, 406 So.2d 770 (La.App. 4th Cir.1981), writ denied, 410 So.2d 758 (La.1982).
In Fontenot, the court refused the plaintiff's request for a judgment debtor examination of the defendant police jury. The court found no need for the examination since the plaintiff could not enforce the judgment through seizure of public property. The plaintiff asserted an examination would not be fruitless because a mandamus could enforce the judgment. The court held that paying judgments was not a ministerial function and not subject to mandamus. In a per curiam opinion, the Supreme Court reinstated the judgment debtor examination, but specifically provided, "... this order is not intended to affect proceedings beyond the judgment debtor examination." Fontenot v. State Dept. of Highways, 355 So.2d 1324 (La.1978). Thus, the Supreme Court apparently intended to leave the ruling on the mandamus intact.
In De Laureal, when plaintiff sought a mandamus ordering the police jury to pay a judgment, the court held, "... appropriation of funds is discretionary and not ministerial, and mandamus will not lie to compel payment of a judgment by a police jury." In concurring with the denial of writs, Justice Dennis noted:
"The anomalous result of allowing suit and liability but providing no coercive means to enforce judgments will remain until the legislature invokes its powers to `provide for the effect of judgment' against government units and devises a mechanism to force agencies and subdivisions of the state to comply with judgments against them." Id. 410 So.2d at p. 759. (Citations omitted.)
This conclusion has been echoed in academic circles.
"It is clear that section 10(C) [La. Const.] does not require the state to pay judgments rendered against local government subdivisions, although it is also clear that the state could adopt legislation so providing or otherwise providing coercive measures to force local governments to pay judgments. In the absence of such legislation, there remains a serious problem with some local government units refusing to pay unpopular judgments, particularly judgments awarding substantial damages *1180 for negligence in constructing and maintaining public roads. In the absence of legislation, the basic remedy is the use of threats from the state governmentif the legislature is willing to use them." Hargrave, "`Statutory' and `Hortatory' Provisions of the Louisiana Constitution of 1974," 43 La.L.Rev. 647, at p. 656.
See also, Opinion-Attorney General, No. 81-223, May 1, 1981.
It is also clear that a mandamus, by its nature, is the incorrect remedy in this situation.
"It is well settled that a writ of mandamus will lie to compel performance of prescribed duties that are purely ministerial; it will not lie to compel performance of an act which contains any element of discretion, however slight." Terral Barge Line, Inc. v. Port Com'n, 577 So.2d 787, 790 (La.App. 2 Cir.1991).
The plaintiff would have us order the City to appropriate money to pay his judgment. However, the decision of how to spend public monies is the very heart of the legislative function. We are hard pressed to find a more fundamentally discretionary function of legislative bodies. As stated in Fontenot, supra, 358 So.2d at p. 982, "The appropriation of funds by a legislative body has been almost universally held to be discretionary, not ministerial." A writ of mandamus does not lie in the case sub judice. The learned trial judge was eminently correct.
Furthermore, we are concerned that issuing a mandamus in such a case would have grave constitutional implications. By ordering a legislative body to appropriate monies, we would be deeply entangling ourselves in a very serious separation of powers issue. State v. City of Shreveport, 231 La. 840, 93 So.2d 187 (1957). We decline to embark on such a reckless course.
Finally, we are not unaware of plaintiff's dilemma. The constitutional waiver of sovereign immunity, combined with the lack of legislation enabling enforcement, provides plaintiff a right without a remedy. However, all authorities point toward a legislative solution. Issuing a mandamus contradicting the long settled jurisprudence surrounding this area of law would only invite more confusion.
For the above and foregoing reasons, we affirm the judgment of the trial court. Costs of this appeal are assessed to plaintiff.
AFFIRMED.
SAUNDERS, J., dissents and assigns reasons.
SAUNDERS, Judge, dissenting.
The majority reviews the constitutional authority and jurisprudence and concludes that no mandamus may issue as the payment of a judgment is strictly a ministerial duty. The majority's position is supported by the recent supreme court case of Chamberlain v. State, through DOTD, et al., 624 So.2d 874 (La. 1993). In discussing this issue and reviewing the legislative history, the supreme court explains to us that LSA-Const. Art. XII, § 10 was a compromise which permits a plaintiff to sue and obtain a judgment, but allows the legislature to determine when and how to pay such judgment. In summarizing its view of §§ 10(A) and 10(C), the court tells us that "[t]hese sections each address different stages of the proceedings against the state: Section 10(A) addresses a claimant's ability to go to court and get a judgment against the state; Section 10(C) addresses the claimant's ability to enforce that judgment. The latter is within the legislature's control, the former is not."
Having said this and recognizing the status of the law in the state, I must say that I do not agree with the proposition that Section 10(C) does not create a ministerial duty on the part of the legislature and its political subdivisions. As I read Section 10(C), it does exactly that. It is, in fact, a compromise in that it provides substantial protection to the public fisc by not allowing seizure of public property and by disallowing seizure of public funds. It also allows the legislature to provide procedures which may in themselves provide further protection to the public fisc.
*1181 However, as I read this Article, it does create a ministerial duty to pay judgments from unencumbered funds and we need to recognize that since this duty is constitutionally created, it is, therefore, a ministerial duty which should be recognized by the courts. Failure to make this distinction is to allow the continuance of not only the dilemma referred to by the majority, but also the very unreasonable position of permitting a governing body to pay some of the judgments that it may care to pay and refuse to pay others for reasons that might be totally arbitrary or even vexatious. Certainly, this is not due process. To ignore the plight of the plaintiff in this case and other cases is to condone arbitrary governmental action which is prohibited by the due process clause of both the state and federal constitutions. This unacceptable and unreasonable result can be avoided by reading Section 10(C) to say what it apparently does say, that is, that a municipality shall pay judgments from unencumbered funds and shall not be forced to pay them from funds which are encumbered and also shall not be subjected to seizure of public property or public funds.
It is true that by ordering a legislative body to appropriate money, we may be entangling ourselves in a serious separation of powers issue, which may be a reckless undertaking. However, I would note that, whether reckless or otherwise, the federal courts have never hesitated to order the state legislature to pay money to protect constitutional rights and have done so on such a regular basis that federal court mandates are now a major item in the state's budget. If citizens cannot come to the courts to protect their constitutional rights, where can they go?
For these reasons, I respectfully dissent.