702 So.2d 715 (1997)
Kenneth D. BAUDOIN, et al., Plaintiffs-Appellants,
v.
ACADIA PARISH POLICE JURY, et al., Defendants-Appellees.
No. 96-1288.
Court of Appeal of Louisiana, Third Circuit.
September 17, 1997.
*716 Sue Fontenot, Abbeville, for Kenneth D. Baudoin, et al.
Charles E. Soileau, Bayne, for Acadia Parish Police Jury.
James Marshall Ross, for Mike Foster Governor, etc.
Before YELVERTON, THIBODEAUX, SAUNDERS, WOODARD and DECUIR, JJ.
YELVERTON, Judge.
The plaintiffs have a money judgment against the Acadia Parish Police Jury for damages based on negligence. The judgment became final in 1993. Efforts to collect it have been unsuccessful. The plaintiffs filed a petition for a writ of mandamus in the district court of Acadia Parish to get the judgment paid. The petition sought a mandamus against the State of Louisiana through its Governor, the Louisiana Senate through its President, the Louisiana House of Representatives through its Speaker, and the Parish of Acadia through its Police Jury. Recognizing in their petition that "the law prohibits seizure of public funds," the petitioners asked for relief against the State in the form of an order to compel the Legislature to "provide for the effect of a judgment" against the State or its political subdivisions, alleging that the Legislature is mandatorily required to do so by the terms of La. Const. art. XII, § 10(C). The petitioners' demand for relief against the Parish was that the Acadia Parish Police Jury be "ordered to accommodate the Louisiana Legislature in all matters necessary in order to formulate a procedure to give effect to the judgment made subject to this action."
The district court for the Fifteenth Judicial District Court dismissed the action, finding that it stated no cause or right of action as to any party. The plaintiffs appealed.[1] We affirm.
La.Code Civ.P. art. 3863 provides that a writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law. The plaintiffs argue that their remedy is mandamus because the legislature's duty to provide for the payment of a judgment is a ministerial one. They argue that the duty derives from La. Const. art. XII, § 10.
In 1993, when plaintiffs' judgment was obtained, Subsections (A) and (C) of § 10 read as follows:
(A) No Immunity in Contract and Tort. Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property.
....
(C) Procedure; Judgments. The legislature shall provide a procedure for suits against the state, a state agency, or a political subdivision. It shall provide for the effect of a judgment, but no public property or public funds shall be subject to seizure. No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which judgment is rendered.
Pursuant to § 10(C) the legislature passed La.R.S. 13:5109, Subsection (B)(2) of which reads:
Any judgment rendered in any suit filed against the state, a state agency, or a political subdivision, or any compromise reached in favor of the plaintiff or plaintiffs in any such suit shall be exigible, payable, and paid only out of funds appropriated *717 for that purpose by the legislature, if the suit was filed against the state or a state agency, or out of funds appropriated for that purpose by the named political subdivision, if the suit was filed against a political subdivision.
By this statute the legislature has provided that any judgment rendered in any suit filed against a political subdivision shall be exigible, payable, and paid only out of funds appropriated for that purpose by the named political subdivision.
In their arguments before the district court and in their briefs before us the plaintiffs acknowledge that they cannot force payment of their judgment by the Police Jury through the seizure of public property or public funds and that they cannot force the Police Jury to appropriate money for the payment of the judgment. What they seek is a mandamus to compel the legislature to perform its allegedly ministerial duty and provide for the effect of a judgment against the State, a state agency, or a political subdivision. Boiled down, what the application for a writ of mandamus is really asking us to do is order the legislature to pass a law that will have the effect of making the Acadia Parish Police Jury appropriate the money to pay this judgment. Stated differently once more, the judicial branch of government is being asked to order the legislative branch of government to provide legislation that will result in a mandatory appropriation to pay this judgment, and presumably every other judgment that has ever been rendered or will be rendered against the State, any state agency, or political subdivision. We are asked to accomplish this by ordering the legislature to do its ministerial duty and provide for the effect of the judgment.
The only effect of this judgment that the plaintiffs want is payment. The word effect as used in § 10(C) is a noun. Black's Law Dictionary defines effect as "result." Webster's New Collegiate Dictionary defines it "1: something that inevitably follows an antecedent (as a cause or agent)." There are many effects of a judgment. Res judicata is an effect of a judgment. Pilié & Pilié v. Metz, 547 So.2d 1305 (La.1989). Recordation of a judgment in the parish mortgage records is an "effect of a judgment." Goldking Properties v. Primeaux, 477 So.2d 76, 78 (La. 1985). Execution of a judgment is an effect of it. Id. Obviously, the only effect of the judgment that the plaintiffs in the present case are interested in is the execution, or payment of it. They are not interested in any effect of the judgment short of its becoming exigible, payable, and paid.
Section 10(C) unambiguously authorizes only the legislature to provide a procedure or provide for the effect of judgments. We do not interpret the constitutional provisions that the legislature "shall provide a procedure" and "shall provide for the effect" to mean that it is mandated to do so, but rather we conclude the language means that as between the three branches of government, these powers belong exclusively to the legislature. Section 10(C) declares that "[t]he legislature [meaning not any other branch of government] shall provide a procedure for suits against the state, a state agency, or a political subdivision." And, "[i]t [meaning the legislature and not another branch of government] shall provide for the effect of a judgment...." Two prohibitions then follow, each of which is a limitation on legislative authority to provide for the effect of a judgment. The first prohibition is that no public property or public funds shall be subject to seizure. The second prohibition is that no judgment against the State, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which judgment is rendered. The word "exigible," according to Black's Law Dictionary, means "demandable; requireable." The word payable, according to the same authority, means "capable of being paid; suitable to be paid; admitting or demanding payment; justly due; legally enforceable." For a judgment to be exigible, payable, or paid, there must first be an appropriation, and the appropriation has to come from the governing body against which the judgment was rendered.
Every Louisiana court that has addressed the subject has so held. A claimant's ability to enforce a judgment against the State is a matter within the legislature's *718 control. Chamberlain v. State, through DOTD, 624 So.2d 874 (La.1993). There is no conflict within § 10, and a judgment creditor of a police jury has no way to collect his judgment except by an appropriation. Foreman v. Vermilion Parish Police Jury, 336 So.2d 986 (La.App. 3 Cir.), writ refused, 339 So.2d 846 (La.1976). Appropriation of funds is discretionary and not ministerial, and mandamus will not lie to compel payment of a judgment by a police jury. De Laureal Engineers Inc. v. St. Charles Parish Police Jury, 406 So.2d 770 (La.App. 4 Cir.1981), writ denied, 410 So.2d 758 (La.1982). Appropriation of funds by a public body is a discretionary, not ministerial duty, and cannot be compelled by a writ of mandamus. Penalber v. Blount, 405 So.2d 1378 (La.App. 1 Cir.), writ denied 407 So.2d 1189 (La.1981). A judgment creditor cannot mandamus a sheriff (a political subdivision) to pay a judgment for personal injuries out of the Sheriff's Salary Fund. Jones v. Traylor, 94-2520 (La. App. 4 Cir. 8/23/95); 660 So.2d 933, writ denied, 95-2320 (La.12/15/95); 664 So.2d 453.
The First Circuit, which reviews cases from the district court where most suits against state agencies are brought, has repeatedly held that judgment creditors cannot mandamus political subdivisions to appropriate funds for payment of a judgment rendered against the political subdivision. In Fontenot v. State, through Dept. of Highways, 358 So.2d 981 (La.App. 1 Cir.1978), rev'd on other grounds, 355 So.2d 1324 (La. 1978), the court said "the appropriation of funds by a legislative body has been almost universally held to be discretionary, not ministerial." In State, Dept. of Trans. & Dev. v. Sugarland Ventures, Inc., 476 So.2d 970 (La. App. 1 Cir.), writ denied 478 So.2d 909 (La. 1985), the court again declared that it lacked the power to compel the State to pay a judgment rendered against it, explaining that the appropriation of funds by a legislative body is generally discretionary, not ministerial. The issue in Salter v. State, through Dept. of Health & Human Resources, 612 So.2d 163 (La.App. 1 Cir.1992) was whether the legislature had the authority to limit interest on judgments against a state agency. The court said that it did, reasoning that the interest rate was an effect of a judgment and that the redactors of § 10(C) intended that the legislature should retain the power to provide for the effect of such judgments. The court cited Sibley v. Bd. of Sup'rs of La. St. Univ., etc., 446 So.2d 760 (La.App. 1 Cir.1983), writ granted, 450 So.2d 960 (La. 1984), affirmed, 462 So.2d 149 (La.1985); on rehearing, 477 So.2d 1094 (La.1985), on remand, 490 So.2d 307 (La.App. 1 Cir.), writ denied, 496 So.2d 325 (La.1986), for the proposition that the legislative power to create includes the power to destroy, and as such, the power to limit.
The most recent decision of the Third Circuit on this subject follows the jurisprudence. In Landry v. City of Erath, 628 So.2d 1178 (La.App. 3 Cir.1993), writ denied, 94-0275 (La.3/25/94), 635 So.2d 235, we held that a mandamus was not available to require a municipality to appropriate funds and to pay a judgment which had been rendered against it. The opinion explained that the decision on how to spend public money is the very heart of the legislative function and that it is perhaps the most fundamentally discretionary function of legislative bodies. The decision concludes with the observation that there is simply no coercive means available to force agencies and subdivisions of the State to comply with judgments against them, citing the jurisprudence from La. Const. art. XII, § 10, and quoting the much cited language from Hargrave, "`Statutory' and `Hortatory' Provisions of the Louisiana Constitution of 1974," 43 La. L.Rev. 647. Judge (now Justice) Knoll, who authored Landry, also believed that for the courts to grant a mandamus would be a "reckless course" for another reason: "[b]y ordering a legislative body to appropriate monies, we would be deeply entangling ourselves in a very serious separation of powers issue." Landry, 628 So.2d at 1180.
Judge Saunders, a member of the Landry panel and also a member of the panel in the case now under consideration, dissented in Landry. Although conceding that the majority position was supported by Chamberlain, 624 So.2d 874, he disagreed, believing that § 10(C) created a ministerial duty to pay judgments from "unencumbered funds" and that due process could support a court order *719 to the legislature to appropriate funds to pay judgments. Judge Saunders recognized the separation of powers problem, but noted that the federal courts have ordered the Louisiana Legislature to pay money to protect constitutional rights.
In the present case the plaintiffs' argument in the district court and in their appeal to us has used Judge Saunders' dissent as a platform on which to mount their case. We have attempted in this opinion to explain to the plaintiffs, that although we are sympathetic with their plight, we are powerless to help them, because we read the law in exactly the same way as the courts in the cases discussed above which also accords with the reasoning of most legal scholars.[2]
It is no answer to the separation of powers problem to say that federal courts order state agencies to pay judgments. La. Const. art. II, § 1 provides that the powers of government of the State are divided into three separate branches: legislative, executive, and judicial. A federal court is not a co-equal branch with the state legislature. When a federal court exercises the functions about which Judge Saunders comments, it is exercising powers derived from federalism. Gary W. v. State of La., 622 F.2d 804 (5th Cir.1980).
The question of whether the right to seize "unencumbered funds" lies within the judicial power was answered over 100 years ago in the case of Carter v. State, 42 La.Ann. 927, 8 So. 836 (1890). That court affirmed a judgment granting the exception of no cause of action. The plaintiff had sought a writ of fieri facias to seize the State's property, rights, and credits "which [allegedly] form no part of its annual revenues derived from taxation for the support of the government, and which [therefore] are not exempt from seizure and sale," for the satisfaction of a judgment against the State. The supreme court explained that to allow the judiciary to issue such a writ would require an inference that the legislature had conferred upon the judicial branch the power to appropriate, a power exclusively belonging to the legislature, in violation of separation of powers. The court in Carter, 8 So. at 837, said:
The fiscal affairs of the state, the possession, control, administration, and disposition of the property, funds, and revenues of the state, are matters appertaining exclusively to the legislative department. Except in so far as the constitution itself has appropriated them to particular purposes, the legislative department has exclusive control of them. No debt of the state can be paid without an appropriation, and the constitution provides the manner in which alone appropriations shall be made. The judicial department is vested with no right or authority over such matters, directly or indirectly. If the legislature, in authorizing the judiciary to entertain suits and render judgments against the state, should add the authority to execute the same by seizure and sale of the state's property and the application thereof to the payment of the debt recognized by the judgment, it would be delegating to the judicial department powers exclusively vested in the legislative department, in violation of the express prohibition of the constitution. The giving to the exercise of such power the form of judicial process would not destroy its essential character. It would still be, in effect, the exercise of the purely legislative power of disposing of and appropriating the property and funds of the state to the payment of a particular debt of the state. Such powers the judiciary and all members thereof are prohibited from exercising with or without the legislative consent. If the legislature could delegate such power in one instance it might refer all public creditors to the courts for satisfaction, and shoulder on the judiciary the whole burden of distributing the state's property and funds among them in a concursus. We will not further elaborate the subject.
By way of summary we quote the words of the trial judge concluding his oral reasons for judgment in this case, addressing the plaintiffs:

*720 ... I ... say ... that you have no right or cause of action. But it doesn't mean that you can't go find out if there's surplus funds. It doesn't mean that you can't have a judgment debtor rule against the Parish of Acadia. Unfortunately for you, though, I think that you're going to do all those things and even if you find surplus funds, the way I see the Constitution, you're not going to be able to enforce it. But it doesn't mean you can't go give them hell.
The unfortunate thing about the trial judge's prediction is that the police jury can be arbitrary and get away with it. It is the nature of separation of powers that there is a line we cannot cross. We respect the fact that the judiciary cannot cross the line and make the legislature make the police jury pay. We will not cross that line and venture into a world that is not our business. That is the police jury's business and we respect that. We want to see justice done: that is our business. We have rendered a judgment against the police jury. That is our business and it is a final judgment. The police jury defended the law suit that resulted in the judgment, and undoubtedly disagreed with our decision. Disagreeing with it is one thing; not respecting it is another. If the police jury is refusing to pay this judgment arbitrarily, it is not showing respect for our judgment. If the Golden Rule applies in separation of powers, the police jury is not playing by the Rule if it disrespects our judgment arbitrarily. It owes this judgment. If it lacks the money and has no reasonable means of acquiring the money to pay this debt, that's something else. But if it has the money or can reasonably acquire the money to pay, it should do so and thereby set an example like most people do and are morally required to doit should pay its debts.
We affirm the judgment of the trial court. Appellants will pay the costs of this appeal.
AFFIRMED.
THIBODEAUX, J., dissents and will assign reasons.
SAUNDERS, J., dissents.
NOTES
[1] Several other exceptions were also filed by the defendants in the district court. Improper venue was one. After granting the exception of no cause of action, the district court also opined, and even included in the judgment, that the exception of improper venue was good. However, no defendant has appealed asking this court to dismiss or transfer for venue, and since the objection of venue is in this instance waivable, it appears that the defendants have elected to take the advantage of a favorable ruling dismissing on the grounds of no cause or right of action. We consider the case properly before us on appeal.
[2] Professor David W. Robertson sees the provisions of La. Const. art. XII, § 10 as "extremely clear" and declares that "no reliable mechanism exists for enforcing judgments against governmental defendants." Robertson, Tort Liability of Governmental Units in Louisiana, 64 Tul.L.Rev. 857, 862 (1990).