Dear Mr. Hightower:
You requested the opinion of this office concerning lease purchase or installment payment agreements for the acquisition of movable equipment by political subdivisions of the State. Your first question is as follows:
 1. Does Act 128 of 2001 make Louisiana Uniform Commercial Code Chapter 9 relative to secured transactions apply to some municipal and other governmental transactions, particularly vehicle lease purchase or installment payment agreements?
Act 128 of 2001 materially revised Chapter 9 of the Uniform Commercial Code pertaining to Secured Transactions, La.R.S. 10:9-101, et seq. ("Revised Chapter 9"). The scope of Revised Chapter 9 is set forth in R.S. 10:9-109, which provides in pertinent part, as follows:
"§ 9-109. Scope
 (a) General scope of Chapter. Except as otherwise provided in subsections (c) and (d), this Chapter applies to:
 (1) a transaction, regardless of its form, that creates by contract a security interest in any type of personal property . . .
***
 (c) Extent to which Chapter does not apply. This Chapter does not apply to the extent that:
 (1) a statute, regulation, or treaty of the United States preempts this Chapter;
 (2) another statute or the constitution of this State expressly governs the creation, perfection, priority, or enforcement of a security interest created by this State or a governmental unit of this State;. . . (Emphasis added)
"Governmental unit" is defined in Section 9-102(a)(45) to mean
 "a subdivision, agency, department, county, parish, municipality, or other unit of the government of the United States, a State, or a foreign country. The term includes an organization, including a public trust, having a separate corporate existence if the organization is eligible to issue debt on which interest is exempt from income taxation under the laws of the United States. The term further includes all public entities as defined in R.S. 39:1421(2)."
The Official Revision Comments to Section 9-109 explain the application of Revised Chapter 9, as follows in pertinent part:
 "(a) . . . Under this Section, all consensual security interests in personal property are covered by revised Chapter 9, except for transactions excluded by Subsections (c) and (d). As to which transactions give rise to a "security interest", the definition of that term in R.S. 10:1-201 must be consulted. When a security interest is created, revised Chapter 9 applies regardless of the form of the transaction or the name that parties have given to it.
 ***
 (d) Subsection (c)(2) changes the law. Security interests created by public entities in connection with the issuance of securities were excluded under former Chapter 9. See former R.S. 10:9-104(e). Revised Chapter 9 applies to security interests created by a governmental unit, which includes by definition all public entities as defined in R.S. 39:1421(2), except to the extent that another statute governs the issue in question. Revised Chapter 9 adds a reference to the Louisiana constitution as well. In Louisiana, R.S. 39:1430.1 will preempt the application of revised Chapter 9 as to public finance transactions involving security interests in taxes, income, revenues, monies or receipts granted by public entities. See R.S. 10:9-102(a)(45)." (Emphasis added)
Furthermore, the comments to the Uniform Commercial Code as found under R.S. 10:9-109 provide as follows:
 "9. Governmental Debtors. Former Section 9-104(e) excluded transfers by governmental debtors. It has been revised and replaced by the exclusions in new paragraphs (2) and (3) of subsection (c). These paragraphs reflect the view that Article 9 should apply to security interests created by a State, foreign country, or a "governmental unit" (defined in Section 9-102) of either except to the extent that another statute governs the issue in question . . ."
Accordingly, Revised Chapter 9 applies to the secured transactions of governmental units (provided that the governmental unit is constitutionally permitted to create a secured transaction), except to the extent that another statute governs such a transaction. We were unable to locate any statute which specifically governs security interests created in connection with lease purchase or installment sale agreements[1], and thus are of the opinion that Revised Chapter 9 applies to lease purchase and installment sale agreements, generally. If however, the lease purchase or installment sale agreement is secured by the "pledge of taxes, income, revenues, monies, or receipts . . . made by a public entity in connection with the issuance of securities", such agreement would not be subject to Revised Chapter 9 but would rather be subject to the provisions of R.S. 39:1430.1.[2]
You advised that the Master Lease Agreement which the City of Shreveport proposes to enter does not involve the pledge or taxes, income, revenues, etc., accordingly, such agreement would be subject to Revised Chapter 9, subject to the City being constitutionally permitted to create a secured transaction.
 2. If Act 128 is applicable, and a security interest in public property is created thereunder, would that make the agreement subject to State Bond Commission approval?
State Bond Commission approval is required whenever a political subdivision incurs debt. La. Const. Art. VII, Sec. 8; R.S. 39:1410.60;Schwab v. City of Kenner, 97-287 (La.App. 5th Cir. 3/11/98), 709 So.2d 320. State Bond Commission approval is also required prior to any person or entity, public or private, incurring debt or issuing evidences of indebtedness for the purpose of financing a project, the interest upon which indebtedness or evidence thereof is exempt from federal income taxation under Section 103 of the Internal Revenue Code. R.S. 39:1405(B).
La. Const. Art. VII, Sec. 14(A) prohibits the funds, credit, property, or things of value of the state or of any political subdivision from being loaned, pledged or donated. Sec. 14(B) contains an exception to this prohibition with respect to "(3) the pledge of public funds, credit, property, or things of value for public purposes with respect to the issuance of bonds or other evidences of indebtedness to meet public obligations as provided by law". (Emphasis added) Consequently, the only security interest which a political subdivision can constitutionally create is the "pledge of public funds, credit, property, or things of value with respect to the issuance of bonds or other evidences of indebtedness to meet public obligations as provided by law". If the lease purchase agreement does not constitute the issuance of bonds or other evidences of indebtedness to meet a public obligation, no security interest can be created.
This office has consistently opined that a lease containing a "non-funding out" or a "non-appropriation clause" does not constitute a debt requiring State Bond Commission approval. Op.Atty.Gen. Nos. 98-258, 95-508, 95-342, 92-559, 86-735, 83-1045, 81-701, 81-160, 78-1089, 77-881. Such clauses provide that, if for any reason, the political subdivision fails to appropriate or make available funds to meet its obligations under the agreement during any fiscal year, the agreement may be terminated, without penalty. Such a clause, in essence, states that the contract is funded on a fiscal year to fiscal year basis and only involves currently appropriated revenue, and, therefore, does not incur indebtedness. The opinion of this office became statutory with the enactment of R.S. 39:1410.60(C). R.S. 39:1410.60(A) requires political subdivisions to obtain State Bond Commission approval in order to borrow money, incur debt, or to issue bonds, or other evidences of debt, or to pledge uncollected taxes or revenues for the payment thereof, where they are authorized by the constitution or laws of the state so to do. R.S.39:1410.60(C)(1) defines "debt" or "evidence of debt" to "not include a lease of a movable or an installment purchase agreement financing the purchase of a movable if the lease or installment purchase agreement contains a nonappropriation clause, and does not contain an anti-substitution or penalty clause; provided that if such lease or installment purchase agreement is entered into in conjunction with the issuance of bonds, notes, certificates, or other obligations which would otherwise be required to be approved by the State Bond Commission, State Bond Commission approval of such financing transaction shall continue to be required."
As public funds, credit, property, or things of value can only be pledged for public purposes with respect to the issuance of bonds or other evidences of indebtedness to meet public obligations as provided by law, and all debt of political subdivisions require State Bond Commission approval, State Bond Commission approval is necessary in order for the City to enter the type of agreement contemplated in your request. In order to obtain the approval of the State Bond Commission, it will be necessary for the political subdivision to provide the State Bond Commission with evidence that there will be sufficient revenues to repay the borrowing[3].
 3. Would the creation of a security interest in public property violate Article XII, Section 10 of the Louisiana Constitution?
La. Const. Art. XII, Sec. 10 provides in pertinent part as follows:
 "Notwithstanding . . . any other provision of this constitution, the legislature by law may limit or provide for the extent of liability of the state, a state agency, or a political subdivision in all cases . . . It shall . . . provide for the effect of a judgment, but no public property or public funds shall be subject to seizure. . . . No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which the judgment is rendered." (Emphasis added)
Accordingly, while Revised Chapter 9 contemplates a security interest in public property and such is authorized by La. Const. Art. VII, Sec.14(B), it is the opinion of this office that a security interest is not enforceable against public property under La. Const. Art. XII, Sec. 10. Public property cannot be seized by a creditor of the political subdivision. Vogt v. Board of Com'rs of Orleans Levee Dist., 2001-0089 (La.App. 4th Cir. 3/27/02), 814 So.2d 648; Baudoin v. Acadia ParishPolice Jury, 96-1288 (La.App. 3rd Cir. 9/17/97), 702 So.2d 715, writ denied 97-2546 (La. 12/19/97), 706 So.2d 458. Any agreement to the contrary would be violative of La. Const. Art. XII, Sec. 10.
Trusting this adequately responds to your request, we remain
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: __________________________ MARTHA S. HESS Assistant Attorney General
RPI:MSH:jv
[1] We are cognizant of R.S. 33:4712.7, which authorizes political subdivisions to finance the acquisition of equipment and other movable property by entering into an installment sale, lease, or similar agreement with any lender or other person, with such agreement being subject to approval of the State Bond Commission in accordance with the provisions of R.S. 39:1410.60 et seq. However, that statute does not "expressly govern the creation, perfection, priority, or enforcement of a security interest created by this State or a governmental unit of this State". (Emphasis added)
[2] See Louisiana Official Revision Comments to R.S. 10:9-109, which state in pertinent part: "R.S. 39:1430.1 will preempt the application of revised Chapter 9 as to public finance transactions involving security interests in taxes, income, revenues, monies or receipts granted by public entities."
[3] Generally such borrowings are either budgetary loans as authorized by R.S. 39:745, et seq.; anticipation of avails loans as authorized by R.S. 39:741, et seq.; or, excess revenue loans as authorized by R.S.33:2921, et seq.