| PLAQUEMINES PARISH GOVERNMENT | * | NO. 2019-CA-0929 |
| | * | |
| VERSUS | * | COURT OF APPEAL |
| | * | |
| W. KEITH HINKLEY, ET AL. | * | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
25TH JDC, PARISH OF PLAQUEMINES
NO. 63-277, DIVISION "A"
Honorable Kevin D. Conner, Judge

* * * * * *

**Judge Regina Bartholomew-Woods**

* * * * * *

(Court composed of Judge Edwin A. Lombard, Judge Sandra Cabrina Jenkins,
Judge Regina Bartholomew-Woods)


Rennie S. Buras, II
Jacque Rene Touzet
333 F. Edward Hebert Blvd., Bldg. 100
Belle Chasse, LA 70037

    COUNSEL FOR PLAINTIFF/APPELLANT


Francis Joseph Lobrano
David F. Waguespack
Peter J. Segrist
CARVER DARDEN KORETZKY TESSIER FINN BLOSSMAN & AREAUX,
LLC
147 Keating Drive
Belle Chasse, LA 70037

    COUNSEL FOR DEFENDANT/APPELLEE


**REVERSED**
**APRIL 22 2020**

*RBW*

*EAL*

*SCJ*

This appeal involves a contempt proceeding arising in a civil action when the district court imposed a daily contempt fine on a political subdivision for not paying a monetary judgment by a certain date. It is from this judgment of contempt that Appellant has filed the instant appeal. For the foregoing reasons, we find that such punishment/coercion by the judicial branch forcing a political subdivision (legislative branch) to pay a monetary judgment offends the notion of the separation of powers between the branches of government and impermissibly infringes upon the legislative branch's power to legislate. Therefore, we reverse the district court.

## FACTS AND PROCEDURAL HISTORY

The undisputed facts of the instant case can be found in this Court's unpublished opinion of *Plaquemines Parish Government v. W. Keith Hinkley, et al.*, 2018-CA-0535, 2018 WL 6378559 (La. App. 4 Cir. 12/05/2018). To briefly

1

summarize, this litigation arose when, on October 25, 2016, the Plaquemines Parish Government ("Appellant") sued Mr. W. Keith Hinkley[1], Louisiana Roofing & Sheet Metal, Inc.,[2] Westbank Roofing Co., Inc.,[3] and Cuzan Services, LLC,[4] (collectively "Appellees").

In the petition for damages, it was alleged that Mr. Hinkley acted in concert with the other Appellees to perform roofing services for Appellant, in violation of the Home Rule Charter of Appellant. Shortly after filing an Answer that denied the allegations, Mr. Hinkley, Louisiana Roofing and Westbank Roofing propounded discovery to Appellants, seeking documentation to support the allegations contained in the petition. In April, 2017, after not receiving documentation supporting the allegations contained in the petition from Appellant, Appellees filed a motion for summary judgment. Appellant filed an opposition to the motion for summary judgment, but also sought a continuance to conduct further discovery. During this same time period, Appellant served Cuzan Services with the petition. After Appellant issued subpoenas to obtain certain financial records of Cuzan Services, Cuzan Services filed an objection to the subpoenas and a motion for summary judgment, along with a motion for sanctions pursuant to La. C.C.P. art. 863.

On April 16, 2018, the trial court, *inter alia,* granted Appellees' Motions for Summary Judgment, which this Court affirmed. *Plaquemines Parish Government*, 2018 WL 6378559. On April 24, 2018, the district court granted Appellees' motion for sanctions against Appellant, and imposed reasonable attorneys' fees and

---

[1] Mr. W. Keith Hinkley served on the Plaquemines Parish Council from January 1, 2007 until December 31, 2014.
[2] Louisiana Roofing & Sheet Metal, Inc., is wholly owned by W. Keith Hinkley.
[3] Westbank Roofing Co., Inc., is owned by family members of W. Keith Hinkley.
[4] Cuzan Services, LLC, is owned by John Hymes.

court costs incurred by Appellees in defending the motion for summary judgment. On June 5, 2018, the district court ordered Appellant to pay said sanctions within sixty (60) days. After Appellant failed to pay said sanctions within the requisite time period, Appellees filed a motion for contempt. On May 17, 2019, the district court, dismissed, without prejudice, Appellees' contempt rule, because the district court reasoned that in accordance with La. C.C.P. arts. 224 and 226, it could not impose a contempt of court against Appellant. In its reasons for judgment, the district court stated the following, in pertinent part: [5]

> The Court [sic] declines to rule on the merits of defendants' [sic] motions for procedural reasons. La. C.C.P. art. 224 lists conduct that may constitute constructive contempt of court, including "(2) Willfull [sic] disobedience of any lawful judgment, order, mandate, writ or process of the court." One penalty available to a Court [sic] holding a party in contempt is provided in La. C.C.P. art. 226: "When the contempt of court consists of the omission to perform an act which is yet in the power of the **person** charged with contempt to perform, he may be imprisoned until he performs it, and in such a case this shall be specified in the court's order." (Emphasis added).
>
> Defendants seek contempt rulings against "Plaquemines Parish Government." Article I of the Plaquemines Parish Charter provides that the Plaquemines Parish Government consists of the parish council and the parish president. The Court [sic] cannot order the Plaquemines Parish Government or the Plaquemines Parish Council imprisoned under La. C.C.P. art. 226, as they are not persons. It may only order elected officials acting in their official capacities as elected officials imprisoned for failing to appropriate the funds to pay the sanctions ordered; but only after those persons are given notice of the rule to show cause. *See Spallone v. U.S.*, 493 U.S. 265, 276-77, 110 S.Ct. 625,

---

[5] It is a " 'well-settled rule that the district court's oral or written reasons for judgment form no part of the judgment, and that appellate courts review judgments, not reasons for judgment.'" *Wooley v. Lucksinger*, 2009-0571, p. 77 (La. 4/1/11), 61 So.3d 507, 572 (quoting *Bellard v. American Cent. Ins. Co.*, 2007-1335, p. 25 (La. 4/18/08), 980 So.2d 654, 671). However, a court of appeal may review the trial court's reasons for judgment to "gain insight" into the trial court's judgment. *Id.*, 2009-0571, p. 78, 61 So.3d at 572; *See also Double NRJ Trucking, Inc. v. Johnson*, 2017-667, p. 7 (La. App. 5 Cir. 5/16/18), 247 So.3d 1125, 1131.

632-633, 107 L.Ed.2d 644 (1990). [Emphasis as in original].

After the district court issued its denial of the contempt, on May 28, 2019, Appellees filed a motion for new trial. Appellees asserted that while the district court declined to issue a contempt based on "imprisonment," Appellees never requested or sought such remedy and that under La. C.C.P. art. 226 other remedies were available, which the district court should consider. Appellant opposed the motion for new trial and stated that the motion did not meet any of the grounds outlined in La. C.C.P. arts. 1971, 1972 or 1973, respectively.[6] Notwithstanding Appellant's argument, the district court granted a new trial and found Appellant in contempt of its June 5, 2018 judgment. As a result, on August 13, 2019, the district court ordered Appellant to pay a contempt fine of $250.00 per day until the underlying judgment that ordered sanctions has been paid to Appellees.

It is from this judgment that Appellant now appeals.[7]

## DISCUSSION

---

[6] La. C.C.P. art. 1971 "Granting of a New Trial" provides:
> A new trial may be granted, upon contradictory motion of any party or by the court on its own motion, to all or any of the parties and on all or part of the issues, or for reargument only. If a new trial is granted as to less than all parties or issues, the judgment may be held in abeyance as to all parties and issues.

La. C.C.P. art. 1972 "Peremptory grounds" provides:
> A new trial shall be granted, upon contradictory motion of any party, in the following cases:
> (1) When the verdict or judgment appears clearly contrary to the law and the evidence.
> (2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.
> (3) When the jury was bribed or has behaved improperly so that impartial justice has not been done.

La. C.C.P. art. 1973 "Discretionary grounds" provides:
> A new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law.

[7] Appellant never appealed the judgment that awarded sanctions; it only appealed the judgment that granted the contempt.

4

*Standard of Review*

This case requires us to interpret Louisiana constitutional articles and statutes relative to the enforcement of a money judgment against a political subdivision of the state, i.e., Appellant. Thus, because this is purely a question of law, we apply a *de novo* standard of review. *See Newman Marchive Partnership, Inc. v. City of Shreveport*, 2007-1890 (La. 4/8/08) 979 So.2d 1262, 1265-66 and *Holly Smith Architects, Inc. v. St. Helena Congregate Facility, Inc.,* 2006-0582, p. 9 (La. 11/29/06), 943 So.2d 1037, 1045.

*Analysis*

A contempt of court is "any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority." La. C.C.P. art. 221. "The authority to punish for contempt of court falls within the inherent power of the court to aid in the exercise of its jurisdiction and to enforce its lawful orders." *In re Succession of Horrell*, 2007-1533, p.12 (La. App. 4 Cir. 10/01/08), 993 So.2d 354, 365 (quoting *de Nunez v. Bartels,* 1997-1384, p. 13 (La. App. 1 Cir. 09/09/98), 727 So.2d 463, 470, in turn citing *In re Merritt,* 391 So.2d 440, 442 (La. 1980) (internal quotation marks omitted). Notwithstanding the aforementioned, a court's power to hold a political subdivision in contempt in order to punish it or coerce it to pay a money judgment is prohibited by certain Louisiana provisions of the constitution, statutory laws and jurisprudential authorities.

Article II, section 1 of the Louisiana Constitution establishes three (3) distinct branches of government: legislative, executive, and judicial. Section 2 of that article provides: "Except as otherwise provided by this constitution, no one of these branches, nor any person holding office in one of them, shall exercise power

belonging to either of the others." La. Const. art. II, §2. Thus, "[t]his trichotomous branching of authority furnishes the basis for the existence of an inherent judicial power which the legislative and executive branches cannot abridge." *Hoag v. State*, 2004-0857, p. 4 (La. 12/01/04), 889 So.2d 1019, 1022. "Similarly the judicial branch may not usurp those powers which are vested in the other two branches." *Id.*

The constitution allocates the judiciary some power over the other branches through article XII, section 10(A), where it waives the State's immunity in suits in contract and tort. *See Jones v. City of Baton Rouge,* 388 So.2d 737, 740 (La. 1980). "Thus, the judicial branch is empowered to render judgments against the state." *Hoag,* 2004-0857, pp. 4-5, 889 So.2d at 1022. However, the constitution does not provide the judiciary with the ability to force when and how the legislative branch of government should pay those monetary judgments. That power of choice is specifically and exclusively reserved to the legislative branch of government as mandated by article XII, § 10(C) of the Louisiana Constitution, which states as follows, in pertinent part:

> [The legislative branch] shall provide a procedure for suits against the state, a state agency, or a political subdivision and provide for the effect of a judgment, but *no public property or public funds shall be subject to seizure*. The legislature may provide that such limitations, procedures and effects of judgments shall be applicable to existing as well as future claims. *No judgment against* the state, a state agency, or *a political subdivision shall be exigible, payable or paid except from funds appropriated therefor* by the legislature or *by the political subdivision against which the judgment is rendered*. [emphasis supplied].

The legislature, in enacting Louisiana Revised Statute 13:5109(B)(2), reiterated the mandates of the aforementioned constitutional provision:

> Any judgment rendered in any suit filed against the state, a state agency or a political subdivision, or any compromise reached in favor of the plaintiff or plaintiffs in any such suit shall be exigible, payable, and paid only out of funds appropriated for that purpose by the legislature, if the suit was filed against the state or a state agency or out of funds appropriated for that purpose by the named political subdivision, if the suit was filed against a political subdivision.

With regard to the aforementioned, Appellees argue that the contempt fine falls outside of the scope of the applicable provisions of the constitution, as well as the state statute and does not offend the notion of separation of powers between the branches of government. In support of their argument, Appellees assert that because *Appellant*, a political subdivision of the State of Louisiana[8], instituted the instant lawsuit, and not *Appellees*, neither the constitution, nor the statute is applicable. Likewise, the district court in its judgment of August 13, 2019, stated essentially the same thing when it ruled as follows:

> **IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the provisions of Art. XII, Sec. 10 of the Louisiana Constitution and La. R.S. 13:5109 and La. R.S. 13:5112 pertaining to the payment of judgments taken against a government entity do not apply to this contempt matter, since the payments ordered herein are sanctions under La. C.C.P. art. 863 arising from a frivolous lawsuit *by* Plaquemines Parish Government *against* private citizens and businesses; and not from a lawsuit by a private citizen or business against the parish. (emphasis as found in original).

Contrarily, Appellant asserts that it is irrelevant who sued whom. The relevant inquiry is whether the judicial branch can compel, via a contempt, a legislative branch how and when to pay a money judgment irrespective of what

---

[8] *See Ocean Energy, Inc. v. Plaquemines Parish Government*, 2004-0066 (La. 07/06/04), 880 So.2d 1, 2 (acknowledging that Plaquemines Parish Government is a political subdivision of the State of Louisiana and the governing authority of the Parish of Plaquemines).

gave rise to the judgment. We agree with Appellant's assertion regarding the relevant inquiry and do not bind ourselves to either Appellees', or the district court's narrow interpretation of the specific constitutional or statutory provision.

In *City of New Orleans v. Municipal Administrative Services, Inc.,* (E.D. La. 2004), unpub., 2004 WL 2496202, the federal district court was asked to find the City of New Orleans in contempt for its failure to pay a monetary judgment arising from a breach of contract. The federal district court recognized that Rule 69(a) of the Federal Rules of Civil Procedure "permits a judgment creditor to use any method of execution consistent with the practice and procedure of the state in which the district court sits." *Id. citing Leroy v. City of Houston,* 906 F.2d 1068, 1085-86 (5th Cir. 1990)(holding that the plaintiffs could not enforce a judgment by executing on city property when such execution was impermissible pursuant to state law, but permitting enforcement of a judgment by writ of mandamus when such procedure is provided for pursuant to state law). Notwithstanding Rule 69(a), the federal district court found that its applicability was limited by Article 12, section 10 of the Louisiana Constitution, which disallows public property or public funds from being subject to seizure. Ultimately, the federal district court held that "issuing an order of contempt and imposing sanctions on the City [of New Orleans] in order to coerce payment of this Court's judgment is inappropriate because such an order would conflict with Louisiana practice and procedure."

In support of its position, the federal district court relied, in part, on this Court's holding in *Vogt v. Bd. of Commissioners of Orleans Levee Dist.,* 2001-0089 (La. App. 4 Cir. 3/27/02), 814 So.2d 648, as well as LSA-R.S. 13:5109. In *Vogt,* this Court analyzed, in great length, those portions of the Louisiana Constitution that define the powers of the differing branches of government, and

8

concluded that it was without constitutional or statutory authority to compel the Levee Board (a legislative branch of government) to pay a judgment that was rendered against it. *Id.*, 2001-0089, pp. 6-11, 814 So.2d at 653-55. This Court emphasized that "[a] judgment creditor of a political subdivision of the State has no way to collect his judgment except by appropriation." *Id*. 2001-0089, p. 8, 814 So.2d at 654, citing *Baudoin v. Acadiana Parish Police Jury*, 1996-1288 (La. App. 3 Cir. 09/17/1997), 702 So.2d 715).

In *Baudoin,* the Third Circuit Court of Appeal, explained the applicability of Article XII, Sec. 10(C) of the Louisiana Constitution as follows:

> Section 10(C) unambiguously authorizes only the legislature to provide a procedure or provide for the effect of judgments. We do not interpret the constitutional provisions that the legislature "shall provide a procedure" and "shall provide for the effect" to mean that it is mandated to do so, but rather we conclude the language means that as between the three branches of government, these powers belong exclusively to the legislature.
>
> Section 10(C) declares that "[t]he legislature [meaning not any other branch of government] shall provide a procedure for suits against the state, a state agency, or a political subdivision." And, "[i]t [meaning the legislature and not another branch of government] shall provide for the effect of a judgment...." Two prohibitions then follow, each of which is a limitation on legislative authority to provide for the effect of a judgment. The first prohibition is that no public property or public funds shall be subject to seizure. The second prohibition is that no judgment against the State, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which judgment is rendered.
>
> &#42; &#42; &#42;
>
> For a judgment to be exigible, payable, or paid, there must first be an appropriation, and the appropriation has to come from the governing body against which the judgment was rendered.

9

1996-1288, 702 So.2d 715, 717-18.

In light of the aforementioned, it is clear that only the legislative branch can determine when and how to pay a monetary judgment, irrespective of the underlying suit that gave rise to said judgment. Our review of jurisprudential authorities, statutory law and constitutional provisions, reveals no exception for a judgment rendered against a political subdivision when the political subdivision is the entity that initiated the lawsuit. Rather, the jurisprudence is replete with cases that speak only to the fact that when a "judgment" is rendered against a legislative body, only the legislative body has the authority to determine when and how that judgment should be paid. *See e.g., Newman,* 2007-1890, 979 So.2d 1262; *Hoag,* 2004-0857, 889 So.2d 1019; *Vogt,* 2001-0089, 814 So.2d 648.

In the present case, we find that the district court offended the separation of powers between the branches of government when it held Appellant in contempt for its failure to pay the underlying sanctions judgment by a particular date. Moreover, during the hearing on the contempt, in an effort to purge the contempt, Appellant explained that it had limited funds and a limited ability to raise new or additional public funds; it had dueling public needs for limited funds and finally, it had judgments that pre-dated the current sanctions judgment and feared an equal protection lawsuit if it paid the current judgment before all of the pre-existing judgments. It further stated that notwithstanding the aforesaid, it would figure out a way to appropriate monies for all outstanding judgments in order to place them in alignment for eventual payment.

In holding Appellant in contempt, the district court exercised powers that unquestionably belonged to the legislative body *vis-à-vis* Appellant. A contempt

10

issued by the judicial branch and used to coerce payment from a political subdivision of the State of Louisiana (the legislative branch) is a clear violation of the separation of powers between the branches of government. Thus, the district court abused its discretion when it issued the contempt against Appellant.

## CONCLUSION

Based on the aforementioned, we find that the district court's imposition of the contempt against Appellant offended the separation of powers. As such the judgment of the district court is hereby **REVERSED.**

**REVERSED**