962 So.2d 1075 (2007)
The NEWMAN MARCHIVE PARTNERSHIP, INC., Plaintiff-Appellant
v.
CITY OF SHREVEPORT, Defendant-Appellee.
No. 42,073-CA.
Court of Appeal of Louisiana, Second Circuit.
March 21, 2007.
Opinion on Rehearing August 22, 2007.
*1076 Wiener, Weiss, & Madison, by John M. Madison, Jr., M. Allyn Stroud, Shreveport, for Appellant.
Mayer, Smith, & Roberts, by Caldwell Roberts, Weems, Schimpf, Gilsoul, Haines, Landry, & Carmouche, by Brian D. Landry, Kenneth Haines, Carey Schimpf, Shreveport, for Appellee.
Before BROWN, DREW, and SEXTON (Pro Tempore), JJ.
BROWN, Chief Judge.
Plaintiff, Newman Marchive Partnership, Inc. ("Newman"), attempted via petition for writ of mandamus to force defendant, the City of Shreveport ("the City"), to pay a money judgment in its favor. Newman now appeals from the trial court's dismissal of its petition. For the reasons set forth below, we affirm the judgment of the trial court.

Facts
Newman successfully sued the City for breach of contract and was awarded damages by a jury on July 16, 2004. This judgment was amended in part and affirmed in part by this court on February 24, 2006. Specifically, this court found that Newman was entitled to a principal amount of $263,674.10, together with legal interest from the date of judicial demand, February 11, 2002, until paid. See Newman Marchive Partnership, Inc. v. City of Shreveport, 40,512 (La.App.2d Cir.02/24/06), 923 So.2d 852, writ denied, 06-1040 (La.06/23/06), 930 So.2d 983.
Payment by the City, however, was not forthcoming, so on September 19, 2006, Newman filed a petition for writ of mandamus, seeking to compel the City, through its chief executive officer, then Mayor Keith Hightower, to pay the judgment. The trial court issued an alternative writ of mandamus directing the City to pay the full amount of principal plus interest due no later than September 22, 2006, or to show cause on September 25, 2006, why the writ should not be made peremptory.
On September 22, 2006, the City made an unconditional tender to Newman of the principal amount of the judgment. The City, however, refused to pay the legal interest due, which was $70,301.66.[1] The City also filed exceptions of no cause of action, unauthorized use of summary proceedings, and improper cumulation. An opposition was filed by Newman, and the exceptions were denied by the trial court at the beginning of the hearing on September 25, 2006. Following the testimony of Mayor Hightower and Tom Cody, the City's risk manager, the trial court found that, "based [upon] the evidence in this case at this time I find that there is an *1077 element of discretion remaining in this case and that mandamus is not appropriate at this time." Judgment recalling the alternative writ of mandamus and dismissing plaintiff's petition for writ of mandamus was rendered on the date of the hearing and signed on September 28, 2006. It is from this judgment that Newman has appealed.

Discussion
Mandamus is a writ directing a public officer to perform a ministerial duty required by law. La. C.C.P. arts. 3861 and 3863. A writ of mandamus is an extraordinary remedy and may be issued in all cases where the law provides no relief by ordinary means or where delay in obtaining ordinary relief may cause injustice. La. C.C.P. art. 3862. If a public officer is vested with any amount of discretion, mandamus will not lie. Vogt v. Board of Commissioners of the Orleans Levee District, 01-0089 (La.App. 4th Cir.03/27/02), 814 So.2d 648, writ granted, 02-1388 (La.09/20/02), 825 So.2d 1153, writ denied, 02-1312 (La.09/20/02), 825 So.2d 1169; Landry v. City of Erath, 628 So.2d 1178 (La.App. 3d Cir.1993), writ denied, 94-0275 (La.03/25/94), 635 So.2d 235.
Louisiana Constitution Article XII, § 10, relative to suits against the state and its political subdivisions, provides:
(A) No Immunity in Contract and Tort. Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property.
(B) Waiver in Other Suits. The legislature may authorize other suits against the state, a state agency, or a political subdivision. A measure authorizing suit shall waive immunity from suit and liability.
(C) Limitations; Procedure: Judgments. Notwithstanding Paragraph (A) or (B) or any other provision of this constitution, the legislature by law may limit or provide for the extent of liability of the state, a state agency, or a political subdivision in all cases, including the circumstances giving rise to liability and the kinds and amounts of recoverable damages. It shall provide a procedure for suits against the state, a state agency, or a political subdivision and provide for the effect of a judgment, but no public property or public funds shall be subject to seizure. The legislature may provide that such limitations, procedures, and effects of judgments shall be applicable to existing as well as future claims. No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which the judgment is rendered. (Emphasis added).
Pursuant to the authorization set forth in La. Const. Art. XII, § 10(C), the legislature enacted La. R.S. 13:5109, which provides in part:
(B)(2) Any judgment rendered in any suit filed against the state, a state agency, or a political subdivision, or any compromise reached in favor of the plaintiff or plaintiffs in any such suit shall be exigible, payable, and paid only out of funds appropriated for that purpose by the legislature, if the suit was filed against the state or a state agency, or out of funds appropriated for that purpose by the named political subdivision, if the suit was filed against a political subdivision. (Emphasis added).
A judgment creditor of a political subdivision of the state has no way to collect its judgment except by appropriation. Vogt, supra; Baudoin v. Acadia Parish Police Jury, 96-1288 (La.App. 3d Cir.09/17/97), 702 So.2d 715, writ denied, 97-2546 *1078 (La.12/19/97), 706 So.2d 458. Appropriation of funds is discretionary and not ministerial, and mandamus will not lie to compel payment of a judgment by a political subdivision. Vogt, supra; De Laureal Engineers, Inc. v. St. Charles Parish Police Jury, 406 So.2d 770 (La.App. 4th Cir. 1981), writ denied, 410 So.2d 758 (La. 1982).
Newman does not dispute that the City's decision of whether to appropriate funds for the satisfaction of a judgment or claim against the City is discretionary. See Vogt, supra; Jones v. Traylor, 94-2520 (La.App. 4th Cir.08/23/95), 660 So.2d 933, writ denied sub nom. Rome v. Stephens, 95-2320 (La.12/15/95), 664 So.2d 453; Landry, supra. However, plaintiff takes the position that what it is seeking is not to compel the appropriation of funds to pay its judgment, but the payment of its judgment from funds that have already been appropriated to the City's Risk Retention Fund.
Newman's argument is not supported by Louisiana statutory law or jurisprudential precedent. The evidence presented to the trial court was that the funds placed in the City's Risk Retention Fund were not specifically appropriated to pay the Newman judgment. Instead, this fund is a pool of money to pay any and all judgments, settlements, and risks for which the City may be held accountable. At the time that the Newman judgment became final, there was over $15 million in the City's Risk Retention Fund. None of this money was placed into or appropriated to the fund with the express purpose of satisfying the Newman judgment.
La. R.S. 13:5109(B)(2) is phrased in the singular, not plural. What is envisioned by this provision is that whenever a judgment is rendered against the state, a state agency, or, as in the instant case, a political subdivision, in favor of the plaintiff in such suit, such a judgment is only exigible, payable, or paid out of funds appropriated for that purpose, i.e., money set aside specifically to satisfy that particular judgment, by the legislature (if the defendant is the state or a state agency) or the political subdivision named in the suit. As noted above, there was no appropriation specifically made for the purpose of satisfying the Newman judgment. Instead, the City's Risk Retention Fund contains money to pay any and all judgments, settlements, and risks, as determined by the City's risk management committee. Obviously in this case, the committee decided to pay the principal amount of the judgment only. As provided by the supreme court in Hoag v. State of Louisiana, 04-0857 (La.12/01/04), 889 So.2d 1019, 1024-1025:
The act which plaintiffs seek court intervention to accomplish is not ministerial because by its very nature, the act of appropriation is discretionary. In fact, the very act of appropriating funds is an integral discretionary function of the legislative branch of our government. The Louisiana Constitution delineates the parameters of each branch of government. Admittedly, there is some inevitable overlap of the functions and each branch of government must strive to maintain the separation of powers by not encroaching upon the power of the others. Consequently, the inherent powers of the judiciary should be used sparingly and only to the extent necessary to insure judicial independence and integrity. Konrad v. Jefferson Parish Council, 520 So.2d 393, 397 (La.1988). Although we recognize that plaintiffs are entitled to payment of the judgment, a writ of mandamus directing the legislature to appropriate funds is an impermissible usurpation of legislative power by the judiciary.
While this court recognizes and sympathizes with plaintiff's plight in getting its *1079 judgment against the City satisfied, we are without constitutional or statutory authority to compel the City to pay the judgment rendered against it. The constitutional waiver of sovereign immunity, together with the lack of legislation enabling enforcement, provides Newman with a right without a remedy. The remedy to this anomaly, however, is in the hands of the legislature, not the judiciary. To hold otherwise would create a separation of powers issue and have grave constitutional implications. See Landry, supra.

Conclusion
For the foregoing reasons, the trial court's judgment is affirmed. Costs of this appeal are assessed to plaintiff, Newman Marchive Partnership, Inc. AFFIRMED.
SEXTON, J., (Pro Tempore), concurs and assigns reasons.
DREW, J., dissents with written reasons.
SEXTON, J. (Pro Tempore), concurs.
This case presents the intriguing res nova question of whether the chief executive of a political subdivision of the State (in this case, the Mayor) has the discretion to order only partial payment of a final judgment out of funds generally appropriated to pay final judgments and other pending claims. It should be noted that these appropriated funds were not specifically appropriated to pay this particular judgment. Impecunity is not an issue as the City has appropriated $15 million for the general purpose of paying judgments and claims.
I do not accept the Mayor's position that the decision not to pay the interest was made by the Risk Management Committee. It is clear from the testimony of Mr. Tom Cody, Risk Manager for the City of Shreveport, that the question of whether to pay this judgment at all was not taken before the Risk Management Committee until approximately one week before the writ of mandamus was filed herein. A review of the previous litigation, Newman Marchive Partnership, Inc. v. City of Shreveport, 40,512 (La.App.2d Cir.2/24/06), 923 So.2d 852, writ denied 06-1040 (La.6/23/06), 930 So.2d 983, causes me to believe that the Mayor made the political decision not to pay the interest on this judgment and the Risk Management Committee simply ratified that decision.[2] Furthermore, I observe that Mr. Cody's effort to find shelter behind City Ordinances § 26-171, et seq., creating the Retained Risk Fund and Risk Management Committee is to no avail. While the fund is established to pay both claims and judgments, I read Sec. 174 dealing with the Risk Management Committee to apply only to the settlement of claims. I further observe that this appears to be the only judgment against the City, at least since Mr. Cody became the Risk Manager for the City in September 1994, that the City has not paid a final judgment in full, including legal interest.[3]
The jurisprudence is replete with cases seeking a mandamus to compel a governmental body to appropriate funds to pay a judgment. Several of these cases are cited in Judge Brown's opinion. The instant case is the only circumstance of which I am aware where the plaintiff has sought to be paid from funds already appropriated to *1080 pay claims and judgments; but there being no specific appropriation to pay this particular judgment.
Thus, the legal issue is what does "appropriated for that purpose" mean in R.S. 13:5109(B)(2). Is "that purpose" the payment of judgments generally or does "that purpose" mean that specific judgment. It is axiomatic that mandamus is a drastic remedy and will not lie if there is any discretion.
My reading comports with Judge Brown's that for mandamus to lie, the appropriation must be for the payment of that specific judgment. I concur that the Mayor has the authority, absent a specific expropriation or ordinance by the City Council, to pay in whole or in part any judgment against the City. This problem requires a legislative solution rather than judicial intervention.
In the final analysis, I cannot improve on what the third circuit said in this respect in Baudoin v. Acadia Parish Police Jury, 96-1288 (La.App. 3d Cir.9/17/97), 702 So.2d 715 at 720, writ denied, 97-2546 (La.12/19/97), 706 So.2d 458. The reader should simply substitute the name City for Police Jury in the expression below:
The unfortunate thing . . . is that the police jury can be arbitrary and get away with it. It is the nature of separation of powers that there is a line we cannot cross. We respect the fact that the judiciary cannot cross the line and make the legislature make the police jury pay. We will not cross that line and venture into a world that is not our business. That is the police jury's business and we respect that. We want to see justice done: that is our business. We have rendered a judgment against the police jury. That is our business and it is a final judgment. The police jury defended the law suit that resulted in the judgment, and undoubtedly disagreed with our decision. Disagreeing with it is one thing; not respecting it is another. If the police jury is refusing to pay this judgment arbitrarily, it is not showing respect for our judgment. If the Golden Rule applies in separation of powers, the police jury is not playing by the Rule if it disrespects our judgment arbitrarily. It owes this judgment. If it lacks the money to pay this debt, that's something else. But if it has the money or can reasonably acquire the money to pay, it should do so and thereby set an example [by doing] like most people do and are morally required to doit should pay its debts.
SEXTON, J., (Pro Tempore), concurs and assigns reasons.
DREW, J., dissents with written reasons.
DREW, J., dissenting.
I respectfully dissent.
La. R.S. 13:5109(B)(2) reads differently (less limiting) to me, in that I believe the funds have already been appropriated to pay this and any other judgment. The City of Shreveport, a judgment debtor, has a $15,000,000 fund set aside to pay judgments. This is a final judgment, and Shreveport needs to respect this judgment and pay what it owes.
What the city administration is doing here definitely does not pass the sniff test, and it is not in the long-term best interest of the city.

ON REHEARING
Before BROWN, CARAWAY, DREW, MOORE and SEXTON (Pro Tempore), JJ.
DREW, J.
This case of long-standing has been in the courts for five years and before this court on two previous occasions. The litigation centers around monies due by the *1081 City of Shreveport for services rendered under an architectural contract. We have set out the factual history in our previous opinions.[1]
Newman Marchive Partnership, Inc. ("Newman"), a judgment creditor of the City of Shreveport, filed this instant litigation seeking a Writ of Mandamus requiring the Mayor of Shreveport to order the City to pay Newman the remaining amount due under the final judgment.
The City, through its Mayor at the time, made an unqualified tender[2] of $263,674.10 on September 22, 2006, for application to the payment of this judgment, categorizing the payment as "principal," with the expressed intention of not paying any accrued interest on the final judgment. We are not constrained by the City's characterization of the payment as "principal," as La. C.C. art. 1866 provides for the attribution of partial payment on a debt which bears interest, such as this judgment.[3]
The trial court refused to grant the Writ of Mandamus ordering the City to pay the remainder of the judgment. Our original three-judge panel rendered an opinion on the mandamus which affirmed the trial court, with one judge concurring, and another judge dissenting. Rehearing was requested and granted, with the case being re-briefed and re-argued before a five-judge panel.
We now reverse the ruling of the trial court, grant the application of plaintiff for the Writ of Mandamus, make the writ peremptory, and require the Honorable Cedric Glover, present Mayor of the City of Shreveport, to order the City to pay:
 the remainder of this judgment in full, which includes all accrued judicial interest, and
 all costs of the district court and this court relative to the mandamus.
During the long history of this suit in the trial court, and until well after the filing of this suit for mandamus, ample funds in the millions of dollars were available from which to pay legal claims and judgments. These sums were deposited into a "retained risk fund." The funds were unattached and were at all pertinent times available to pay this entire judgment, including interest and all costs of court.
We reject the City's argument that each judgment requires a separate appropriation by which to pay a particular judgment. This position is belied by the City's purported partial payment of "principal" without any specific appropriation. The funds paid came from the retained risk fund, which was set aside to pay claims and judgments. La. C.C. art.2000 recognizes that legal interest, the time value of money, is part of the damages for the delay in payment of sums justly due.
We find that mandamus lies in this situation because:
 the City was lawfully cast in judgment for this indebtedness, including the accrued interest at that time;

*1082  the City elected to pay and did pay part of the judgment from its appropriated retained risk fund;
 the original judgment was based on the failure to pay sums of money; and
 at all relevant times, the City had sufficient funds in its retained risk fund by which to pay the remainder of this legal obligation.
Well after Newman filed this suit for mandamus, the City enacted ordinances setting a city policy of not paying interest on any judgment. These recent actions of the City have no bearing on this instant dispute, because the rights of all parties were locked in by the facts, constitutional articles, state statutes, and local ordinances in effect on the date Newman filed its mandamus action. We pretermit any comments concerning the prospective effect or lack of effect of the recent amendments to the City's ordinances. See State Through Dept. of Transp. and Development v. Estate of Davis, 572 So.2d 39 (La.1990).
At issue is the proper interpretation of La. R.S. 13:5109, relative to payment of judgments against a political subdivision. The statute states, with our emphasis:
A. In any suit filed against the state of Louisiana, a state officer, a state agency, a local public official or a political subdivision, the defendant, or the proper representative thereof, upon the advice and with the concurrence of the attorney general, district attorney, parish attorney, city attorney, or other proper official, as the case may be, may compromise and settle the claims presented in any such suit.
B. (1) If a judgment is rendered by a trial or appellate court or the supreme court against the state or a state agency in the amount of five hundred thousand dollars or more, and the attorney general is not an attorney of record in the suit, the clerk of the court shall also mail a notice of judgment to the attorney general, through the chief of the civil division, in accordance with Code of Civil Procedure Articles 1913, 2166, or 2167, as appropriate.
(2) Any judgment rendered in any suit filed against the state, a state agency, or a political subdivision, or any compromise reached in favor of the plaintiff or plaintiffs in any such suit shall be exigible, payable, and paid only out of funds appropriated for that purpose by the legislature, if the suit was filed against the state or a state agency, or out of funds appropriated for that purpose by the named political subdivision, if the suit was filed against a political subdivision.
C. The governing authority of a parish or municipality, upon the advice and the concurrence of the district attorney, parish attorney, or city attorney of that parish or municipality or proper official as the case may be, may compromise or settle any claim against that parish or municipality without the necessity for the filing of a suit against the parish or municipality in the matter. Any such compromise settlement shall be exigible, payable, and paid only out of funds appropriated for that purpose by the governing authority of that parish or municipality. No claim in excess of ten thousand dollars may be compromised or settled as provided herein before ten days have elapsed after the publication of such proposed compromise or settlement in the official journal of the appropriate political subdivision.
We read La. R.S. 13:5109(B)(2) to allow mandamus to issue under these facts. The City appropriated up to $15,000,000.00 into a special account from which to pay legal settlements and judgments. These funds were appropriated to pay final judgments, *1083 and Newman had and has a final judgment.
Our great country has a system of checks and balances whereby only the legislative branch (e.g., a city council) can enact laws. Only the executive branch (e.g., a mayor and police) can enforce the law. Our founding fathers set up an independent judiciary to interpret laws, and calmly resolve disputes in a courtroom. The judicial function is to assess the proven facts, apply the pertinent laws, and make a fair, just, and considered decision based thereon. At the time this mandamus action was filed and tried, the legislative branch of city government had appropriated all the money needed to pay this judgment, but for whatever reason the executive branch refused to pay. Therefore, the judicial branch, through mandamus, may order that the legislative mandate be effectuated.
In State ex rel. Carondelet Canal & Navigation Co. v. City of New Orleans, 30 La. Ann. 129 (La.1878), a judgment was obtained against the City of New Orleans and, in accordance with law, registered with the city.[4] Once a judgment was so registered, it became the city's duty to pay it without special appropriation provided there remained enough money in the budget that was designated for that purpose. If an insufficient amount remained in the designated fund, the city had the option of paying the judgment from money set aside in the budget for contingent expenses. If this option was not exercised, the city was required to pay all judgments in the order in which they were registered out of money set aside for that purpose in the following year's budget. Finding that the city had the duty to provide for payment of all the registered judgments in the next annual budget, the court allowed the judgment creditor to proceed by mandamus.
See also Barrett v. City of New Orleans, 33 La. Ann. 542 (La.1881), which is in accord with Carondelet Canal.[5] We note that Carondelet Canal also provided a mechanism by which to replace in mandamus litigation, the public official to whom the mandamus is directed. Consequently, since the Honorable Keith Hightower is no longer the mayor, his place in this mandamus litigation is now taken by the Honorable Cedric Glover, the present Mayor of Shreveport.
The Honorable Mayor Glover is entitled to a specific directive from this court as to what he should do and when to do it. We shall attempt to comply with this entitlement.
After two runs through the appellate maze, it was established that the total dollar amount owed as of the date of judicial demand (February 11, 2002) was $263,674.10. This amount is not in dispute.
On September 22, 2006, Mayor Hightower did pay exactly this amount, but by that time $70,206.33 of judicial interest had accrued, making a total due of $333,880.43 as of the date of partial payment. The effect of Mayor Hightower's unconditional tender of $263,674.10 on that date had the legal effect of paying all accrued judicial interest to that date, and some of the principal, leaving the City $70,206.33 short in paying off this lawful debt. To this $70,206.33[6] *1084 must now be added judicial interest from September 22, 2006, until the debt is paid in full.[7] We respectfully issue a Writ of Mandamus ordering Honorable Mayor Cedric Glover to cause to be paid from city funds to Newman Marchive Partnership, Inc., within 30 days of the finality of this judgment:
 $70,206.33 (the shortfall as of 9/22/06, the date of partial payment);
 accrued judicial interest thereon in the amount of $5,725.43, representing judicial interest from September 22, 2006, to August 17, 2007;[8]
 additional per diem judicial interest of $18.27 for each day after August 17, 2007, until payment is made in full; and
 all district and appellate costs of court attributable to the mandamus, which we set in the amount of $838.06.[9]
The separation of powers argument here, as we see it, actually tilts towards the architects and not the City  our system of government embodies the social contract that judgments of courts are to be respected.
To affirm the learned trial court's denial of mandamus will put us on a slippery slope, with unseen consequences down the road, raising these questions:
 What is to keep a city from declaring that it will not pay the principal on any judgment?
 What incentive will a city's attorney ever have to expeditiously move a case through the judicial system, reasoning that it will be better to pay the principal on a judgment in 2037 dollars, rather than 2007 dollars?
 Will this position adversely affect the City's bond rating?
No branch of government can arbitrarily declare that it will not obey the law. The $15 million was appropriated, and this judgment, under these facts, must be paid.
We reverse the decision of the learned trial court, and with all respect, order that the Honorable Cedric Glover, Mayor of the City of Shreveport, pay, within 30 days of the finality of this judgment, the remainder of this judgment in full, from funds of the City of Shreveport, including all additional judicial interest accruing since the City's partial payment, together with court costs generated relative to this mandamus proceeding, in the amount of $838.06, all as outlined and calculated hereinbefore.
The City of Shreveport is certainly entitled to a credit for any costs of court previously paid by the City relative to the mandamus litigation.

DECREE
For the reasons expressed, it is ordered, adjudged, and decreed that the trial court's denial of the application for writ of mandamus is reversed.
It is further ordered, adjudged and decreed that a peremptory Writ of Mandamus issue, ordering that the Honorable Cedric Glover, Mayor of the City of Shreveport, within 30 days of the finality *1085 of this judgment, pay the remainder of this judgment in full, from funds of the City of Shreveport, including all additional judicial interest accruing since the City's partial tender, together with all court costs generated relative to this mandamus proceeding, which are fixed in the amount of $838.06.
BROWN, C.J., dissents with written reasons.
CARAWAY, J., concurs in part and dissents in part with written reasons.
SEXTON, J., Pro Tempore, concurs in the result and assigns reasons.

 Attachment "A"
 Newman Marchive Partnership, Inc. v. City of Shreveport
 This Court's Computation(s) of Amounts Due under Judgment
Interest from 2/11/02 through 12/31/02 on $263,674.10 @ 5.75% judicial interest ×
88.49% (323/365 days) = $ 13,416.20
Interest for all of 2003 on $263,674.10 @ 4.5% judicial interest = $ 11,865.33
Interest for all of 2004 on $263,674.10 @ 5.25% judicial interest = $ 13,842.89
Interest for all of 2005 on $263,674.10 @ 6.00% judicial interest = $ 15,820.45
Interest from 1/1/06 through 9/22/06 on $263,674.10 @ 8.00% judicial interest ×
72.35% (264/365 days) = $ 15,261.46
 INITIAL RECAP
 $263,674.10
 + 13,416.20
 + 11,865.33
 + 13,842.89
 + 15,820.45
 + 15,261.46
 ___________
= Balance due on 9/22/06 $333,880.43
Less payment made 9/22/06 (attributable to interest, then principal) - $263,674.10
 ___________
= Remaining balance due after 9/22/06 payment $ 70,206.33
Interest from 9/22/06 through 12/31/06 on $70,206.33 @ 8.00% judicial interest ×
27.40% (100/365 days) = $ 1,538.92
Interest from 1/1/07 through 8/17/07 on $70,206.33 @ 9.5% judicial interest ×
62.77% (229/365 days) = $ 4,186.51
 ___________
Leaves remaining balance owing on judgment as of 8/17/07 $ 75,931.76
+ combined costs of court attributable to mandamus [$632.56 + $214.50] + $ 838.06
 ___________
Equals this total amount required to effectuate full payment as of 8/17/07: $ 76,769.82
Additional prospective daily interest after 8/17/07:
[$70,206.33 × 9.5% (judicial interest) × .XXXXXXXXXX (1/365)] =
$18.27 additional interest per diem after 8/17/07.

BROWN, Chief Judge, Dissenting.
I reurge the rationale set forth in the original opinion which affirmed the trial court's judgment. I would add that the new majority opinion on rehearing ignores the constitution and states that "[A]t issue is the proper interpretation of La. R.S. 13:5109." To the contrary, at issue is Article XII, Section 10 of the Louisiana Constitution of 1974. Section 10(A) provides that neither the state, a state agency, nor a *1086 political subdivision shall be immune from actions "in contract or for injury to person or property." This broad expansion of the right to sue was offset by Section 10(C)'s limitation on the ability to enforce a judgment against the state, a state agency, or a political subdivision. This provision clearly states that "no public property or public funds shall be subject to seizure." The clear public policy expressed in Section 10(C) is that such seizures could impede government activity necessary to protect the health, safety, or welfare of its citizens.
The Louisiana Constitution further states that the legislature "may limit or provide for the extent of liability" and "such limitations, procedures, and effects of judgments shall be applicable to existing as well as future claims." (Emphasis added). In this case, the City has limited the effects of judgments to the payment of principal. Section 10(C) of the constitution also provides that no judgment (singular) shall be exigible, payable, or paid except from funds appropriated therefore (in this case) by the municipality.
The justification for the majority opinion on rehearing is that the City Council has appropriated funds for this debt and that the mayor simply refused to sign the check. This is a fallacious conclusion. First, the "retention risk fund" is not an appropriation to pay this judgment; and, second, it was the City Council, not the mayor, that passed the amendment limiting the payment of existing as well as future claims to only principal amounts. The mayor never had (and does not have now) the authority to pay this judgment.
As far as the comments on separation of powers, I repeat what our supreme court said in Hoag v. State of Louisiana, 04-0857 (La.12/01/04), 889 So.2d 1019, 1024-1025:
The act which plaintiffs seek court intervention to accomplish is not ministerial because by its very nature, the act of appropriation is discretionary. In fact, the very act of appropriating funds is an integral discretionary function of the legislative branch of our government. The Louisiana Constitution delineates the parameters of each branch of government. Admittedly, there is some inevitable overlap of the functions and each branch of government must strive to maintain the separation of powers by not encroaching upon the power of the others. Consequently, the inherent powers of the judiciary should be used sparingly and only to the extent necessary to insure judicial independence and integrity. Konrad v. Jefferson Parish Council, 520 So.2d 393, 397 (La.1988). Although we recognize that plaintiffs are entitled to payment of the judgment, a writ of mandamus directing the legislature to appropriate funds is an impermissible usurpation of legislative power by the judiciary.
No matter what it is called, the act sanctioned by this court's opinion constitutes a seizure of public funds. Louisiana's constitution, while expanding the right to sue, clearly proscribes the seizure of public funds. This constitutional prohibition was founded on the belief that the potential harmful consequences of such a seizure were unacceptable.
I respectfully dissent from the majority opinion on rehearing.
CARAWAY, J., concurring in part and dissenting in part.
I agree with the majority that the city council has appropriated more money than the $263,674.10 payment that has now been made toward the plaintiff's judgment against the City. However, I disagree that the amendment to the city ordinances that occurred after the trial of this case has no effect over a mandamus order that can be fashioned by this court.
*1087 I voted to grant rehearing in this matter on the strength of the city ordinances which had evidenced the appropriation of funds for "paying . . . judgments against the City by third parties." The funding of the City's risk retention fund represented an appropriation for any judgment, including Newman's judgment. Such appropriation removed from the mayor any executive discretion, making appropriate the issuance of a writ of mandamus ordering payment of the entirety of the judgment.[1] Viewed in a different light, the mayor's partial payment of $263,674.10 toward the judgment debt immediately before the trial of this mandamus was not an unauthorized expenditure of city funds divorced from any appropriation grant from the city council. The same legislative authority of the council that allowed that partial payment required full payment. Thus, the mayor's parsing of payment of the judgment was clearly an arbitrary and capricious act by the executive and violative of the charge given to him by the council to pay "judgments against the City."
Since our earliest civil codes before statehood, our law has always been clear that Newman's money judgment is a singular expression of the computation of "damages" that resulted because of the City's breach of contract. See La. C.C. art.2000, and its source articles of the Louisiana Civil Code.[2] Under our civil law theory, the measure of damages using an interest calculation represents reparation for the loss suffered by the creditor, and not a penalty imposed on the debtor. Trans-Global Alloy, Ltd. v. First National Bank of Jefferson Parish, 583 So.2d 443, 457 (La.1991). To refer to this reparation as legal interest or judicial interest is somewhat misleading, as though it is something extra tacked on by the judicial process. This is the damage caused by the City's failure to perform and rests on the economic principle of the time value of money.
When Newman's judgment was granted after the trial of the parties' dispute, the money judgment represented all the economic "damages" which Newman suffered for the City's failure to meet its contractual obligations through the date of judgment. On February 24, 2006, when this court amended the trial court's initial judgment, the total money judgment which this court rendered for Newman's "damages" was $321,839.52 in the eyes of Louisiana law. This court's opinion expressing that amount as the sum of $263,674.10 and legal interest from February 11, 2002, the date of judicial demand, is no less the award of a single money judgment for $321,839.52 in damages as of February 24, 2006. Damages had been finally assessed and the interest calculation could be merged into a single judgment amount. Next time, we will look up the statute, do the math, and list one clear amount. The mayor's misguided calculation recognized just the same that Newman was damaged, that the judicial process has identified Newman's damages, and that the city council has appropriated funds for the payment of the *1088 judgment for damages. Yet, capriciously, the damages were not fully paid.
Accordingly, I would rule that at the time the mayor made payment to Newman for $263,674.10, payment should have been made for at least the total amount of the judgment for damages, $321,839.52, before any question of judicial interest arose. As to this amount, I agree with the majority that mandamus lies for the unpaid portion ($321,839.52 minus $263,674.10). However, the issue of interest that accrued after the February 24, 2006 judgment date presents a separate question in view of the existing appropriation by the council.
My partial dissent from the majority ruling concerns the effect of the city council amendment to the ordinances that occurred the day after the trial of this case in September 2006. The amendment purports to place a limit on the appropriation for the risk retention fund as follows:
It is further the policy of the city not to pay interest on judgments of Louisiana courts.
A mandamus order for payment must be aimed prospectively at specific appropriated funds that have been legislatively made available for payment. To that extent, the September 2006 amendment to the ordinance has prospective effect over the availability of these funds as appropriated monies for which the ministerial duty for payment can be ordered by a court. The clear language of the ordinance says that the city council has not appropriated monies "to pay interest on judgments." This legislative act limiting appropriation involves a policy choice that effects the overall economic operations of city government. While there may have been no economic justification for the City's amendment to its appropriation, that question is for the council to decide and not a court. The Constitution allows the council to make no appropriation whatsoever for payment of any judgment against the City, and under such circumstances, no seizure of public property or writ of mandamus will avail the creditor in collection of a judgment. Accordingly, the city has not appropriated funds for payment of the interest on plaintiff's judgment which accrued after the date of the February 24, 2006 judgment. To the extent that the majority orders payment of that interest via mandamus, I respectfully dissent.
SEXTON, J., Pro Tempore, concurs.
The city elected to pay this judgment from its general appropriation for judgments and claims. The "interest" on this particular judgment can also be said to be "damages" representing the time value of money, as this was an obligation of the city to pay money. La. C.C. art.2000. The city has sufficient funds appropriated to pay the entire judgment. The payment the city made just before the mandamus trial should be first imputed to interest. While the city may have wanted that payment to be "principal," nothing in this record indicates that the plaintiff consented. La. C.C. art. 1866. Thus, I agree some of the "principal," as well as the interest (or damages) on the remainder, is still owed by the city.
I consider the amendment to the city ordinance to be of no moment in this case. Interest is a substantive right and here, indeed, is damages. The effect of the amendment, if any, can only be on future cases. State Through Dept. of Transp. and Development v. Estate of Davis, 572 So.2d 39 (La.12/3/90).
While normally a specific appropriation is required for each judgment to be paid, and mandamus is not available to force an appropriation, I now am of the view that a specific appropriation is unnecessary in these limited circumstances and that mandamus *1089 will lie to compel payment of the remainder of the judgment.
NOTES
[1] This amount is the interest due from the date of judicial demand, February 11, 2002, until the date that the City paid the principal amount of the judgment, September 22, 2006.
[2] The question of whether interest was due on the amount assessed against the City in the earlier Newman Marchive Partnership case was an issue therein. As that opinion pointed out, interest is appropriate because the judgment creditor has lost the use of funds to which he was legally entitled and had to sue to obtain.
[3] The City paid the entirety of the Whitaker Construction judgment by its check, but was apparently reimbursed for some portion of the interest from other parties defendant.
[1] See Newman Marchive Partnership, Inc. v. City of Shreveport, 41,460 (La.App.2d Cir.11/1/06), 944 So.2d 703, writs denied, XXXX-XXXX (La.3/9/07), 949 So.2d 448, and XXXX-XXXX (La.3/9/07), 949 So.2d 452; Newman Marchive Partnership, Inc. v. City of Shreveport, 40,512 (La.App.2d Cir.2/24/06), 923 So.2d 852, writ denied, XXXX-XXXX (La.6/23/06), 930 So.2d 983.
[2] Three days before the show-cause hearing on the application for mandamus.
[3] La. C.C. art. 1866. Payment imputed to interest.

An obligor of a debt that bears interest may not, without the obligee's consent, impute a payment to principal when interest is due. A payment made on principal and interest must be imputed first to interest.
[4] This same law, Act 5 of 1870, forbade the enforcement of judgments against New Orleans by execution.
[5] We recognize that the Louisiana Constitutions in effect when the opinions in Carondelet Canal and Barrett were rendered, the Constitutions of 1868 and 1879 respectively, apparently did not contain provisions similar to that found in Article XII, § 10, of our present Constitution, which prohibit the seizure of public property or public funds.
[6] All of the $70,206.33 is attributable to principal. Not a penny of the remaining sums due represents interest on interest.
[7] See attached computation sheet, marked as Attachment "A," which attachment is incorporated into this opinion. We have calculated the payoff through August 17, 2007, and have further computed the additional sum accruing daily ($18.27) after that date, until full payment is made.
[8] Full payment as of August 17, 2007, would be, according to our calculations, $75,931.76 plus combined court costs of 838.06, totaling exactly $76,778.82. After August 17, 2007, daily interest of $18.27 must be added to this amount.
[9] La. R.S. 13:5112 requires that costs be set in a sum certain when the party cast for costs is a public entity. The appellate costs for this portion of the appeal concerning the mandamus are $214.50. We categorize $623.56 as mandamus-related, district court costs.
[1] The limitation of the last sentence of Article VII, Section 10(C) of our constitution prevents this judgment against the City from becoming "payable, or paid except from funds appropriated therefor . . . by the political subdivision." Once that appropriation has occurred and the constitutional limit satisfied, the executive/mayor may be ordered by mandamus to carry out the council's appropriation for the judgment as a ministerial act.
[2] Article 2000 is in Civil Code, Title IV dealing with conventional obligations, Chapter 8, Section 4, pertaining to "Damages." It provides that "[w]hen the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due."