985 So.2d 80 (2008)
BARRIERE CONSTRUCTION CO., L.L.C.
v.
TANGIPAHOA PARISH GOVERNMENT.
No. 2007 CW 2367.
Court of Appeal of Louisiana, First Circuit.
March 5, 2008.
Michael R.C. Riess, Stuart G. Richeson, Kingsmill Riess, LLC, New Orleans, LA, for Plaintiff-Relator, Barriere Construction Co., L.L.C.
Scott M. Perrilloux, District Attorney, Clifton T. Speed, Assistant District Attorney, Greensburg, LA, for Defendant-Respondent, Tangipahoa Parish Government.
Before PARRO, KUHN, and DOWNING, JJ.
PER CURIAM.
At issue herein is whether the trial court properly granted a political subdivision's motion for a protective order, thereby limiting the scope of information available to the judgment creditor in a judgment debtor examination of the political subdivision.
In 2004, Barriere Construction Co., L.L.C. ("Barriere"), as the general contractor, entered into a contract with the Tangipahoa Parish Government ("the Parish"), as the owner, for a road improvement project entitled "Phase XI Overlay Project No. 0403-19" ("the Project"). During the course of the Project, Barriere asserts that it performed work beyond the original scope of the Project, for which the Parish refused to pay Barriere.
In 2005, Barriere filed suit against the Parish, seeking to recover the cost of the extra work performed. In March 2007, Judge Robert H. Morrison, III granted summary judgment in favor of Barriere and against the Parish in the amount of Two Hundred Fifty-Three Thousand, Six Hundred Twenty-Three and 16/100 Dollars ($253,623.16), plus interest and costs. No appeal was taken from the judgment and the judgment remains unsatisfied.
Thereafter, in August 2007, Barriere filed a broad judgment debtor rule against the Parish, seeking to determine if there were funds available from which it could satisfy the judgment.[1] In response to the *82 judgment debtor rule, the Parish filed a motion to quash, or in the alternative, for a protective order. The Parish urged that its assets are exempt from seizure under the Louisiana Constitution and that Barriere had no legal basis to compel the execution of the judgment or for forcing payment of the judgment. After a hearing, the district court denied the Parish's motion to quash, but granted the motion for a *83 protective order. The district court limited the scope of Barriere's judgment debtor examination to the "existence and amount of any separate account established by [the Parish] for the payment of judgment and legal claims, and to the existence and remaining amount of any segregated account maintained by [the Parish] for the specific construction project which was the basis of this lawsuit." Barriere has timely filed the underlying writ application, seeking review of the trial court's ruling granting the Parish's protective order.

DISCUSSION
Barriere contends that while the district court did not provide written or oral reasons for its ruling, it presumably issued the protective order based on the Parish's argument that the sole purpose of a judgment debtor rule is to aid in the execution of judgment, and since the Parish's property and funds are not subject to seizure under Louisiana law, Barriere should not be allowed to conduct a judgment debtor rule. Barriere avers that while the district court and the Parish are correct that public property and public funds of a political subdivision are not subject to seizure to satisfy a judgment,[2] that does not immunize such entities from a judgment debtor examination[3] or limit the scope of the examination to determine if funds have been appropriated. Barriere notes that the scope of the judgment debtor examination is broad and should be liberally construed in its favor in order to foster its obvious purpose and intent. See e.g. Dunn & Bradstreet, Inc. v. Harrison, 289 So.2d 316, 317 (La.App. 1 Cir.1973).
Barriere notes that the Louisiana Supreme Court has ruled that political subdivisions of the state are subject to judgment debtor examinations. See Fontenot v. State Through Dept. of Highways, 355 So.2d 1324 (La.1978), Hill on Behalf of Williams v. City of New Orleans, 549 So.2d 858 (La.1989), and Fire Fighters Local 632 v. City of New Orleans, 549 So.2d 858 (La.1989). Moreover, Barriere cites North Cent. Utilities, Inc. v. East Columbia Water Distr., 516 So.2d 1268 (La.App. 2 Cir.1987), wherein the Second Circuit acknowledged that property of the judgment debtor water district was exempt *84 from seizure and that the judgment could only be satisfied out of funds appropriated for that purpose, but held:
Whether information developed by a judgment debtor examination in this case will lead to some other remedy which the judgment creditor may employ to enforce collection of its judgment, or support some other basis for relief, we are not called upon to decide. However, in Fontenot, supra, the Louisiana Supreme Court has clearly held that plaintiff is entitled to conduct a judgment debtor examination under the circumstances we find here. The trial court was in error in denying the plaintiff that relief.
Id. at 1272. Therefore, the court held that the judgment creditor was entitled to proceed with the judgment debtor examination. The Louisiana Supreme Court, in a case decided after North Central Utilities, issued the following ruling:
GRANTED: As the court of appeal correctly noted, a judgment creditor is entitled to examine his debtor even though the latter is a public body. Fontenot v. State, et al[.], 355 So.2d 1324 (La.1978). However, the examination must be conducted with regard to legal limitations on executing the subject judgment. For example, examination about property owned by the City of New Orleans is pointless because public property is exempt from seizure. LSA-Const. art. 12, § 10(C).
The trial court is instructed to allow the judgment debtor examination to be conducted, but to make such protective orders as are appropriate, after giving the parties an opportunity to be heard.
Hill, 549 So.2d at 858. Therefore, under the supreme court's ruling in Hill, the district court can issue a protective order in favor of a political subdivision to limit the judgment creditor to seeking only information about property that may be used to satisfy its judgment.
Barriere contends that it seeks to develop information regarding two potential sources of funds that might be used to satisfy its judgment: (1) money in possession of the Parish that does not belong to the Parish and (2) any other funds that have been appropriated by the Parish. Barriere contends that if the Parish is in possession of funds that do not belong to it or is in possession of funds that had been appropriated for the Project or otherwise to pay judgments, then those funds are available for seizure to satisfy the judgment.
Regarding the first potential source of funds, Barriere contends that funds in the Parish's possession that do not belong to the Parish are not exempt from seizure. Barriere cites Firefighters' Ret. Sys. v. Landrieu, 572 So.2d 1175 (La.App. 1 Cir. 1990), writ denied, 575 So.2d 811 (La. 1991), wherein the state treasurer was in possession of money belonging to the firefighters and police retirement systems, and the trial court ordered the treasurer to turn those funds over to the state retirement system. On appeal, the treasurer argued that the trial court's order violated the constitutional provision that no state funds shall be subject to seizure. In upholding the trial court's decision, this court found that the money in the state treasurer's possession did not constitute state funds, but rather belonged to the retirement systems, and that the prohibition against seizure of the funds did not apply. Although Barriere opines that it should be able to ascertain whether the Parish possesses funds that do not belong to it, the cited jurisprudence merely stands for the *85 proposition that these non-exempt funds can be sought by their rightful owner. As such, even assuming that Barriere would discover non-exempt funds that belong to another entity, Barriere could not seize those funds to satisfy its judgment.
As to the second potential source of funds, Barriere asserts that it seeks by its judgment debtor examination to develop information concerning whether the Parish has made any other "appropriations" of funds. If any funds have been appropriated, Barriere asserts that a writ of mandamus would be available to compel the payment of those funds to Barriere to satisfy its judgment. In support of this proposition, Barriere cites Newman Marchive P'ship, Inc. v. City of Shreveport, 42,073 (La.App. 2 Cir. 3/21/07), 962 So.2d 1075 (on rehearing), where the court held that the City of Shreveport had "appropriated" funds to pay the judgment at issue when it established a "retained risk fund," which was set aside to pay claims and judgments against it, even though funds for the specific judgment at issue had not been appropriated. The Second Circuit indicated that it read La. R.S. 13:5109(B)(2) "to allow mandamus to issue under these facts [insofar as] [t]he City appropriated up to $15,000,000.00 into a special account from which to pay legal settlements and judgments. These funds were appropriated to pay final judgments, and [plaintiff] had and has a final judgment." Id. at 1082-83. While we recognize the broad definition the Second Circuit assigned to the term "appropriated," we note that the Louisiana Supreme Court has granted writs in the Newman case. See Newman, XXXX-XXXX (La.11/21/07), 967 So.2d 527. Moreover, unlike the City of Shreveport, the Parish contends that it has not set up a fund to pay judgments rendered against it. Even assuming that the Parish has set up such a fund, the trial court's ruling allows Barriere to question the Parish as to the "existence and amount of any separate account established by [the Parish] for the payment of judgment and legal claims." As such, although we are not considering the efficacy of the Second Circuit's ruling, we find that the trial court properly limited the judgment debtor examination within the confines of the Newman decision.
While we understand Barriere's position, we are unable to provide any redress if the Parish has not appropriated funds to pay Barriere's judgment. The sole remedy at law for satisfaction of a judgment against the Parish is provided in La. R.S. 13:5109(B), which provides that a judgment may be paid only out of "funds appropriated for that purpose by the political subdivision." Moreover, the judiciary is prohibited by the Louisiana Constitution from compelling the legislature to appropriate funds to pay Barriere's judgment, because a writ of mandamus is appropriate only to compel the accomplishment of ministerial, non-discretionary acts. Hoag v. State, XXXX-XXXX, p. 9 (La.11/1/04), 889 So.2d 1019, 1025. Because the judgment debtor examination must be conducted with regard to legal limitations on executing the subject judgment, we find that the trial judge properly limited the scope of the examination. Accordingly, we hereby deny Barriere's writ application.
WRIT DENIED.
NOTES
[1] Specifically, the judgment debtor rule sought examination of the following:

(A) Records of any and all accounts containing funds dedicated or appropriated for road and bridge maintenance and improvement. Please produce documents sufficient to identify the institution in which the accounts are held, the account numbers and the current balance of the accounts.
(B) Please produce records of any and all accounts containing funds derived as a result of the one percent sales tax imposed by the ordinance attached hereto as Exhibit "A." Please produce records sufficient to identify the institution in which the accounts are currently held, the account numbers and the current balance of the account.
(C) Please produce records of any and all accounts containing funds set aside and/or appropriated to pay any and all judgments against TPG [the "Parish]. To the extent that funds are set aside or appropriated to pay specific judgments, please produce documents sufficient to identify which judgments the funds are set aside to pay. Please also produce documents sufficient to identify the institution in which the accounts are currently held, the account numbers and the current balance of the accounts.
(D) Please produce any and all documents and in any way showing that TPG has set aside, appropriated, reserved, dedicated, or otherwise earmarked any funds to satisfy Barriere's judgment in the captioned matter. Please also produce documents sufficient to identify the institution in which such funds are held, the account numbers and the current balance of the accounts in which the funds are held.
(E) Please produce any and all documents in any way related to the appropriation of funds by TPG to satisfy Barriere's judgment in the captioned matter.
(F) Records of any and all accounts containing funds which were used to pay any costs incurred by TPG in connection with road improvement project entitled, Phase XI Overlay, Project No. 04-03-19 (hereinafter, "the Project"). Please produce records sufficient to show all parties who were paid monies in connection with the Project, the amount of monies paid to those parties, and when the payments were made. For the aforementioned accounts, please also produce records sufficient to identify the institution in which the accounts are currently held, the account numbers and the current balance of the accounts.
(G) Please produce records identifying the source of any and all funds received by TPG and which were appropriated for the Project and/or which were used in connection with the Project. To the extent that TPG received funds from state or federal government for use in connection with the Project, and which were not otherwise spent on the Project, please produce copies of documents sufficient to show the amount of such funds that remain unspent. Please also produce documents sufficient to identify the institutions in which any and all accounts containing such funds are held, the account numbers for any and all such accounts and the current balance of appropriated but unspent funds in those accounts.
(H) Please produce documents sufficient to show the amount of all funds appropriated by TPG for the Project and the total amount expended by the TPG on the Project. To the extent that the amounts appropriated for the Project by TPG was not fully spent on the Project, please also produce records sufficient to identify the institution in which the accounts containing such funds are currently held, the account numbers of any and all accounts containing such funds and the current balance of such appropriated but unspent funds in those accounts.
(I) To the extent not otherwise produced, please produce records of any and all accounts containing funds belonging to TPG which have not otherwise been appropriated, dedicated or encumbered as of the date of the filing of this judgment debtor rule. Please produce documents sufficient to identify the institutions in winch the accounts are currently held, the account numbers for the accounts and the current balances in those accounts.
[2] Louisiana Const. art. XII, § 10(C) provides, in pertinent part, as follows:

[The legislature] shall provide a procedure for suits against the state, a state agency, or a political subdivision and provide for the effect of a judgment, but no public property or public funds shall be subject to seizure. The legislature may provide that such limitations, procedures, and effects of judgments shall be applicable to existing as well as future claims. No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which the judgment is rendered.
Additionally, La. R.S. 13:5109(B)(2) provides:
Any judgment rendered in any suit filed against the state, a state agency, or a political subdivision, or any compromise reached in favor of the plaintiff or plaintiffs in any such suit shall be exigible, payable, and paid only out of funds appropriated for that purpose by the legislature, if the suit was filed against the state or a state agency, or out of funds appropriated for that purpose by the named political subdivision, if the suit was filed against a political subdivision.
[3] Louisiana Code of Civil Procedure article 2451 provides:

A. In aid of execution the judgment creditor may examine the judgment debtor, his books, papers, or documents, upon any matter relating to his property, either as provided in Articles 1421 through 1515 or as provided in Articles 2452 through 2456.
B. In aid of execution of the judgment, the judgment creditor may also examine any person upon any matter relating to the judgment debtor's property, as provided in Articles 1421 through 1474.